## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CASE NO. 8:12-cv-00557-JDW-EAJ

BURTON W. WIAND, ESQ., as
Court-Appointed Receiver for
SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT
PARTNERS, L.P., VICTORY IRA
FUND, LTD., VICTORY FUND, LTD.,
VIKING IRA FUND, LLC, and
VIKING FUND, LLC,

     Plaintiff,

v.

WELLS FARGO BANK, N.A., as
successor-in-interest to Wachovia Bank, N.A.
and Timothy Ryan Best,

     Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT,
## AND TO STRIKE CERTAIN ALLEGATIONS THEREIN

Defendants Wells Fargo Bank, N.A. as successor by merger with

Wachovia Bank, N.A. ("Wachovia") and Timothy Ryan Best ("Best")

(collectively, "Defendants"), through their counsel and pursuant to Federal

Rules of Civil Procedure 12(b)(6) and 12(f), move to dismiss the second amended complaint [Doc. 63] filed by Burton W. Wiand, Esq. as receiver (the "Receiver") for failure to state a claim and, additionally and alternatively, to strike certain allegations therein.

In sum, the Receiver has failed to cure the deficiencies identified in this Court's earlier Orders directed to previous versions of the Receiver's pleadings. The second amended complaint should be dismissed with prejudice.

## A. **Counts I through IV Fail to State Claims for Aiding and Abetting**.

In its August 2, 2012 Order that dismissed the aiding and abetting claims from the Receiver's original complaint, this Court recognized that a claim for aiding and abetting requires "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; (3) and the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."  (Order Granting, In Part, Defs.' Motions to Dismiss Compl. [hereinafter, "First Dismissal Order"], p. 2 (quoting Lawrence v. Bank of America, N.A., 455 F. App'x 904, 906 (11th Cir. 2012) (hereinafter, "Lawrence II") [Doc. 37].)  Counts I through IV of the second amended complaint must be dismissed because they fail to allege specific facts that "give rise to a strong inference of actual knowledge"

regarding Nadel's alleged underlying fraud or that support the inference that Defendants knowingly rendered substantial assistance in the commission of the underlying wrongdoing.  Lawrence v. Bank of America, N.A., 2010 WL 3467501, at *3 (M.D. Fla. Aug. 30, 2010) (hereinafter, "Lawrence I").

Factual allegations that Defendants *actually knew* that Nadel was using the deposit accounts to perpetrate a fraud on, breach his fiduciary duties to, and steal from the Hedge Funds are essential to establish the "actual knowledge" element of the Receiver's aiding and abetting claims.  (See First Dismissal Order, p. 3.)  However, like the Receiver's original complaint, the second amended complaint alleges no facts to justify a plausible inference that Defendants actually knew—or even suspected—that Nadel was engaged in any scheme to defraud, conversion, or breach of fiduciary duty at any time before the Receiver was appointed in mid-January 2009.  Instead, the Receiver continues to rely solely on allegations that, over the course of nearly a decade of banking activity at three separate banks, enough information eventually accumulated that gave (or should have given) Defendants "actual knowledge" that Nadel was engaged in fraud, and that he was not the successful hedge fund and real estate investment manager that he claimed to be.  When the Receiver's purely conclusory and speculative assertions are disregarded, the second

amended complaint contends Defendants had actual knowledge that Nadel was running a Ponzi scheme because:

- Nadel had been disbarred, he played the piano in cocktail lounges, he had money judgments entered against him and he had been divorced several times (2d Am. Compl. ¶¶ 38-39);

- Nadel had "provided incorrect information" to Wachovia in account opening documents, describing Valhalla Investments as a sole proprietorship, when it was really a limited partnership; describing Victory Fund as a general partnership, when it was really a limited partnership; and describing Viking Fund as a sole proprietorship, when it was really a limited liability company (id. at ¶¶ 40-52);

- Wachovia's account-opening, account-monitoring, and anti-money-laundering procedures were inadequate, and it lacked proper documentation of Nadel's authority to open accounts using fictitious names (id. at ¶¶ 53-57);

- Wachovia's "fraud detection systems should have been triggered" by transactions in the accounts, and Defendants had missed opportunities to review "repeated clear indications" of money laundering, and to request that Nadel explain those transactions (id. at ¶¶ 58-62);

- Scoop Real Estate and Viking Fund had bank accounts at Northern Trust Bank, Scoop Capital was the general partner of Scoop Real Estate, and Nadel had a fiduciary duty to these entities as their investment advisor (id. at ¶¶ 63-65);

- Defendants had missed "additional opportunit[ies] to look behind the curtain and see Nadel's true background" in the course of mortgage loan transactions (id. at ¶¶ 66-73);

- Large, round-dollar sums had been transferred among accounts Nadel maintained at Wachovia, and wired between Wachovia accounts and accounts at Northern Trust Bank and Goldman Sachs (id. at ¶¶ 75-82).

These allegations are strikingly similar to those found insufficient to state aiding and abetting claims in the <u>Lawrence</u> decisions and that this Court found insufficient in <u>Groom v. Bank of America</u>, 2012 WL 50250 (M.D. Fla. Jan. 9, 2012), and are essentially identical to those this Court found insufficient in the First Dismissal Order in this case.  (<u>See</u> First Dismissal Order, pp. 2-4.)

The Receiver's second amended complaint alleges Wachovia has admitted that its "fraud alert system" triggered an alert that was evaluated by bank employees and resulted in internal investigations into activity in Nadel-related accounts.  (2d Am. Compl. ¶¶ 27 and 62.)  However, conspicuously absent from the Receiver's pleading is any indication of *when* the alert and investigations occurred.

Allegations of time are material "when testing the sufficiency of a pleading".  <u>See</u> Fed. R. Civ. P. 9(f).  The allegations regarding Wachovia's purported "admission" are based on selected excerpts from Wachovia's answer to interrogatories.  The complete answer to those interrogatories makes it clear the only investigation by the bank concerning activity in any Nadel-related accounts started on January 20, 2009, just one day before the Receiver was appointed.  (<u>See</u> Excerpt from Wachovia's Am. and Supplemented Response to

Pl.'s Interrogatories No. 7 and 8, attached as **Composite Exhibit A-1**.)[1] Similarly, the "fraud alert" referenced in the second amended complaint was generated based on transactions that occurred during December 2008, and was reviewed by a bank employee in January 2009 <u>after</u> the Receiver had been appointed.  (<u>See</u> <u>id.</u>)

The Receiver's second amended complaint also suggests that Defendants were complicit in Nadel's fraud because the bank's records reflect that the deposit account opened for Laurel Preserve, LLC "did not pass verification" because documentation that should have been provided when the account was first opened was not provided to the bank.  (2d Am. Compl. ¶ 71, n.6.) However, the Receiver fails to mention that the same records the Receiver relies on to make this allegation reflect very clearly that the missing documentation was promptly thereafter provided, and the account thereupon cleared the verification process.  (<u>See</u> emails confirming that deposit account for Laurel Preserve, LLC had cleared verification process, attached as part of **Composite Exhibit A-2**, and <u>infra</u> note 1.)

---

[1] The documents attached as exhibits to this motion may be considered by this Court without converting the motion into one for summary judgment because they are undisputed and the Receiver has made them central to his claims in the second amended complaint.  <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005).

Finally, the Receiver alleges that "enhanced due diligence, including a court records search," conducted in connection with mortgage loans provided Defendants with knowledge that Nadel was a judgment debtor.  (See 2d Am. Compl. ¶¶ 5, 39, 69 and 72.)  Setting aside the fact that a judgment against someone does not even suggest (much less compel the conclusion) that the person is a Ponzi-schemer, the Receiver overlooks the fact that the only records of "enhanced due diligence" conducted on Nadel resulted in a "no negative news" report from the vendor back to the bank, and provided Defendants no information about anything at all untoward concerning Nadel or his entities. (See emails regarding enhanced due diligence requests and results on Nadel, attached as **Composite Exhibit A-3**, and supra note 1.)

The Receiver's allegations in the second amended complaint in this case stand in stark contrast to the amended complaint in Groom v. TD Bank, N.A. d/b/a Mercantile Bank, which *did* allege a factual basis for the inference that the defendant bank there actually knew about its customer's fraud, and used that information to prolong the life of its customer's scheme in order to advance the bank's own interests.  See Order Denying Def. Mercantile Bank's Motion to Dismiss 3d Am. Compl., Case No. 8:08-cv-02567-JDW-EAJ, ECF No. 186 (April 4, 2012).  There, the plaintiff alleged the bank conducted an investigation

that revealed its customer was using false financial statements prepared by non-existent accountants to promote investment in an airline that had few, if any, airplanes.  The bank then used the knowledge gained from its investigation to advance the bank's own interest in having the customer secure other financing before the scheme collapsed to pay off a $13 million loan overdue to the bank.

By contrast, the Receiver's second amended complaint in this case alleges at most that Defendants had "actual knowledge" of the sort of "atypical and irregular banking practices," that were alleged originally against all bank defendants in the Groom case and found insufficient to support the plaintiff's aiding and abetting claims.  See Groom v. Bank of America, 2012 WL 50250.  Here, no plausible inference of Defendants' actual knowledge of Nadel's underlying fraud may be drawn simply from the transfer of funds between accounts.  Lawrence I at *4.  Accordingly, internal transfers and outgoing wire transfers from Nadel-controlled Wachovia accounts (2d Am. Compl. ¶¶ 76-77 and 82) did not give Defendants "actual knowledge" of anything.  Perlman v. Wells Fargo Bank, N.A., 2012 WL 3289826, at *1 (S.D. Fla. Aug. 10, 2012) (stating "banks have no duty to investigate even suspicious transactions, [so] allegations of such transactions do not demonstrate the actual knowledge required for aiding and abetting claims").

Similarly, under Article 4A of the Uniform Commercial Code, Defendants cannot be charged with "actual knowledge" that might have been gleaned from incoming wire payment orders that identified a beneficiary by name. (See 2d Am. Compl. ¶¶ 45-47 and 80, wire payment orders attached as **Composite Exhibit B**, and infra note 1.)  This is because payment orders directed to a valid beneficiary account number are automatically processed as authorized by § 670.207, Florida Statutes, and therefore confer no knowledge upon a beneficiary bank regarding the name of the intended beneficiary.  See Fla. Stat. §§ 670.207(2)(a) (despite any discrepancy between beneficiary name and title of beneficiary account identified by number, bank properly credits the specified account number unless the bank has actual knowledge that the name and number do not match); Fla. Stat. § 670.207 Unif. Commercial Code Cmt. 2 (noting that inclusion of beneficiary name "plays no part in the process of payment" done by automated systems that refer solely to the "account number without human reading of the payment order itself," and that statute eliminates duty to compare name and account number because "[m]anual handling of payment orders is both expensive and subject to human error," and if "a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost"); 671.209(2) and (6) (defining "knowledge" as

actual knowledge, effective only when brought to the attention of the person conducting the transaction on the bank's behalf).  There is no allegation in the Receiver's second amended complaint that there was a bank employee involved in processing incoming wire payment orders who was aware of any discrepancy, much less that any such employee had "actual knowledge" of any fraud or theft.

Because the Receiver has not alleged facts to establish Defendants had actual knowledge of Nadel's alleged wrongdoing, the Receiver has, necessarily, failed to properly allege that Defendants "knowingly" rendered substantial assistance.  Lawrence I at *2.  Allegations of a failure to adhere to customary or standard practices, or conclusory allegations that a customer was permitted to engage in suspicious transactions, are insufficient to demonstrate substantial assistance.  Groom v. Bank of America, 2012 WL 50250, at *4.

The second amended complaint, just like the original complaint, alleges only that Defendants failed to take action that they supposedly ought to have taken based on the "red flags" allegedly raised in the course of Nadel's use of the accounts and ordinary course mortgage loan transactions.  Such allegations are insufficient to support inferences of actual knowledge and substantial assistance required to support the aiding and abetting claims.  Accordingly,

Counts I through IV of the Receiver's second amended complaint should be dismissed with prejudice.

**B. <u>Count V Fails to State A Claim For Negligence</u>.**

The Receiver's amended complaint also fails to state any negligence claim.

(1) <u>No Knowledge or Notice That Accounts Held Fiduciary Funds or That a Diversion of Funds Was about to Occur or Was Ongoing</u>.

Despite this Court's ruling in the First Dismissal Order that Defendants owed no general duty of care to the non-Wachovia-customer Hedge Funds, the Receiver persists in asserting this theory in the second amended complaint.[2] (<u>See</u> First Dismissal Order, pp. 5-6; 2d Am. Compl. ¶¶ 122-123.)

Some courts have recognized that a bank may be held responsible for failing to prevent a diversion of a non-customer's funds where, *inter alia*, "the bank knows or ought to know of the fiduciary relationship between the customer and the non-customer, and [] the bank has actual knowledge or notice that a diversion is to occur or is ongoing."  (First Dismissal Order at pp. 5-6.) The second amended complaint acknowledges that the accounts Nadel opened

---

[2] Additionally, despite this Court's Order striking the Receiver's first amended complaint for failure to comply with Federal Rule of Civil Procedure 8(a) [Doc. 60], the second amended complaint relies on repeated recitations of circumstances alleged simultaneously to constitute actual knowledge and substantial assistance and breach of a duty in negligence, and its negligence claim incorporates by reference each of the preceding aiding and abetting claims. (<u>See</u> 2d Am. Compl. ¶¶ 89-90, 101-102, 108-109, 115-116, and 123(k).)

were "business checking accounts" rather than trust or escrow accounts (2d Am. Compl. ¶ 29), yet it fails to allege any facts to support the inference that Defendants knew or should have known that money deposited into the accounts was money held by Nadel as a fiduciary, and fails to allege facts to support the inference that Defendants actually knew or suspected that a diversion of such funds was about to occur or was ongoing.  Each of these facts is an essential element of the Receiver's negligence claim, and the Receiver has pled neither fact in the second amended complaint.

The Receiver's negligence claim must allege facts "to support the 'sole inference' that the funds being deposited are held in a fiduciary capacity."  First Dismissal Order p. 6.  Although the second amended complaint asserts that Defendants had knowledge of Nadel's fiduciary relationship to all of the Hedge Funds, nowhere does it assert, even in conclusory fashion, that Defendants knew that funds deposited or transferred into the Wachovia accounts was money that Nadel controlled only in his capacity as a fiduciary.

The fact that there is a transfer of funds from a fiduciary account to another, non-fiduciary account—even to a non-fiduciary account controlled by the fiduciary individually—does not mean that the transferred funds retained their fiduciary character throughout the course of the transfer.  See  Atlanta &

St. A.B. Ry. Co. v. Barnes, 95 F.2d 273, 275-276 (5th Cir. 1938) (recognizing that a fiduciary may validly transfer to himself, individually, funds from a trust account because he may have become entitled, individually, to such payment in the course of the valid operation of the trust).  The Receiver cannot rely on the mere transfer of funds between or among accounts as a basis to conclude that Defendants should have known that funds controlled by Nadel as fiduciary for the Hedge Funds had been deposited into the Wachovia accounts.  (See First Dismissal Order, p. 7.)

More obviously, the second amended complaint lacks facts to support the inference that Defendants knew about or even suspected any misappropriation by Nadel, and therefore fails to state a negligence claim.

The Receiver's conclusion that Wachovia "knew Nadel was diverting limited partnership funds to" the DBA accounts is based on wire transfers that were sent by Goldman Sachs to the accounts Nadel controlled at Wachovia. (2d Am. Compl. ¶¶ 45-47 and 80.)   As explained above, incoming wire transfers are processed by automated means and a bank to which wires are sent is required to credit the wire to the account identified by number without regard to any beneficiary name information contained in the payment order.  See supra, pp. 9-10.  The Receiver's efforts to establish Wachovia had knowledge

of Nadel's alleged misdeeds based on wire transfers sent to Wachovia therefore must fail.

Under Florida law, a bank "has the right to assume that individuals who have the legal authority to handle [an] entity's accounts do not misuse the entity's funds." O'Halloran v. First Union Nat'l Bank of Florida, 350 F.3d 1197, 1205 (11th Cir. 2003).  A bank may be held responsible for a diversion of fiduciary funds only when the bank "knows that an actual misappropriation is intended or is in progress," or knows "of suspicious circumstances which render the bank guilty of bad faith in failing to [i]nquire further." Barnes, 95 F.2d at 275-278.  There is no claim against a bank for mere negligence in failing to monitor its customer's conduct with respect to funds held as a fiduciary; the bank's conduct must amount to such actual knowledge as required to establish aiding and abetting liability, or such "willful ignorance" of suspicious circumstances as would demonstrate the bank's bad faith in failing to further inquire. Id.

Willful ignorance arises from "circumstances which reasonably support the sole inference that a misappropriation is intended." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 288 (2d Cir. 2006); see also O'Halloran, 350 F.3d at 1200 and 1205-1206 (affirming dismissal of tort claims against bank, rejecting

contention that bank should have suspected likely misappropriation by fiduciary who proposed to withdraw from church account $2.8 million in cash, all in $100 bills).   There are no allegations in the Receiver's second amended complaint that plausibly support the conclusion that either of Defendants knew or had reason to suspect that Nadel was stealing from the Hedge Funds. Moreover, allegations in the second amended complaint that Defendants engaged in "enhanced due diligence" and account-opening verification negate any inference that Defendants engaged in "willful ignorance" concerning Nadel and the deposit accounts.   Cf. Lawrence II at 907 (bank's conduct cited by plaintiff as supporting inference of bank's involvement in customer's fraud "would more easily be interpreted to demonstrate [the bank's] lack of awareness of [customer's] fraudulent activities").

(2)  The Customer Hedge Funds Cannot Assert a Negligence Claim.

Additionally, as to the two Wachovia-customer Hedge Funds (Scoop Real Estate, L.P. and Victory Fund, Ltd.), the Receiver's negligence claim must be dismissed as barred by the economic loss rule.

The relationship between a bank and its depositors is a contractual debtor-creditor relationship.  McCrory Stores Corp. v. Tunnicliffe, 104 Fla. 683, 687, 140 So. 806, 807 (1932).  The economic loss rule prohibits contracting parties

from employing tort theories to recover purely economic losses unless there is a tort separate and independent from the parties' contract.  See, e.g., Florida Power & Light Co. v. Westinghouse Electric Corp., 510 So. 2d 899, 902 (Fla. 1987).  A bank has no obligation to monitor the account activity of a depositor, and will not be held responsible for failing to discover that a depositor has been victimized by an embezzler, absent a contractual duty to do so.  Globe Motor Car Co. v. First Fidelity Bank, N.A., 273 N.J. Super. 388, 395 (1993); also see Perlman v. Wells Fargo Bank, N.A., 830 F. Supp. 2d 1308, 1325-1326 (S.D. Fla. 2011) (dismissing negligence claim asserted by receiver on behalf of depositor), on reconsideration, 2012 WL 3289826 (Aug. 10, 2012).

Any claim on behalf of Scoop Real Estate, L.P. and Victory Fund, Ltd. for matters relating to the use of their deposit accounts, must be based on, and is governed by, the contractual relationship between the parties.  (See, supra n.1; see, e.g., **Composite Exhibit C-1** (account signature card for Scoop Real Estate, L.P., providing agreement to the terms and conditions of the deposit agreement governing the account, and certificate of authority for Victory Fund, Ltd. account, certifying that Nadel and his wife were "all of the partners" in that entity, confirming bank's authority to honor Nadel's instructions, and expressly providing that bank is "under no obligation to make any inquiry or to verify or

… see to the application of the partnership or LLC funds for the purpose" of the entity's valid business, and "further, that the Bank will in no way be responsible for misapplication of partnership or LLC funds or other property acquired, encumbered, or disposed of by virtue of the authority" given to Nadel); **Composite Exhibit C-2** (including, u.e.g., Deposit Agreement and Disclosures for Commercial Accounts effective January 1, 2004, Section I ¶ 2 (defining "commercial accounts" as including those titled in entities and in "an individual who intends to use the account for carrying on a trade or business"), ¶ 6 (authorizing bank to act upon the instruction of person who signed signature card), ¶ 12 (providing information about available fraud detection/deterrence products, and for waiver of any claims that could have been prevented by such products), ¶ 14 (requiring prompt review of account statements by customer to discover and report unauthorized transactions, and for waiver of claims based on matters not discovered and reported timely), ¶ 46 (providing that "deposit relationship" between bank and depositor is governed by deposit agreement).)

Because the matters asserted in the negligence claim are not separate and independent from the parties' performance under the deposit agreements between Wachovia, on the one hand, and Scoop Real Estate, L.P. and Victory

Fund, Ltd., on the other, Count V of the second amended complaint as asserted on their behalf must be dismissed.

(3)  No Duty Based on Violation of AML Statutes, Regulations or Manuals.

It is well settled that anti-money-laundering statutes and regulations do not establish a duty upon which a common law negligence claim may be based. Marlin v. Moody National Bank, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006); see also Public Service Company of Oklahoma v. A Plus, Inc., 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011); In re Agape Litigation, 681 F. Supp. 2d 352, 360-61 (E.D.N.Y. 2010); El Camino Resources, Ltd. v. Huntington National Bank, 722 F. Supp. 2d 875, 923 (W.D. Mich. 2010); Armstrong v. American Pallet Leasing, Inc., 678 F. Supp. 2d 827, 874-75 (N.D. Iowa 2009). Accordingly, the second amended complaint cannot state any claim based on an alleged failure to comply with those statutes or regulations.  Moreover, even if any claim in the second amended complaint survives dismissal, assertions concerning those statutes and regulations in paragraphs 30-34, 36, 53-54, 60-61, and 75-83 have been unnecessarily incorporated by reference into Counts I through V of the Receiver's second amended complaint, and should be stricken. Slone v. Judd, 2009 WL 5214984, at *1 (M.D. Fla. Dec. 29, 2009) (Whittemore, J.).

## C.  **Count VI Fails to State a Claim for Fraudulent Transfer**.

In Count VI, the Receiver purports to state a claim against both Defendants under Florida's Uniform Fraudulent Transfer Act ("FUFTA") to recover three categories of transfers: (1) transfers "into and amongst Wachovia shadow bank accounts of monies invested in the Hedge Funds in the amounts identified in Exhibit B" to the second amended complaint (hereinafter, the "Exhibit B Transfers"); (2) transfers to Wachovia "of security interests in five properties"[3] in connection with mortgage loans; and (3) transfers to Wachovia "of mortgage payments towards the above-described five mortgage loans" as detailed in Exhibit A to the second amended complaint (hereinafter, the "Exhibit A Loan Repayments").  (2d Am. Compl. ¶¶ 126-137.)

The fraudulent transfer claim must be dismissed as to Best because (as in the original complaint), although it purports to seek relief against both Defendants, it does not describe any transfer made to Best.  Freeman v. First Union National Bank, 865 So. 2d 1272, 1277 (Fla. 2004) (stating "FUFTA was not intended to serve as a vehicle by which a creditor may bring suit against a

---

[3] Notwithstanding that the Receiver purports to challenge the grant of security interests in five properties, the second amended complaint identifies only four properties.  (2d Am. Compl. ¶¶ 68-71.)

non-transferee party . . . for monetary damages arising from the non-transferee party's alleged aiding and abetting of a fraudulent money transfer").[4]

Based on additional factual allegations included in the Receiver's second amended complaint and on legal authority published after entry of this Court's First Dismissal Order, Wachovia respectfully submits that the fraudulent transfer claim also must be dismissed as to Wachovia because it seeks to recover purported transfers as to which Wachovia was never a transferee, and otherwise fails to state a claim for fraudulent transfers.

First, the Receiver cannot recover the Exhibit B Transfers from Wachovia, because Wachovia was never a transferee of those transfers. Wachovia's only role in those transactions was as a depositary bank.  Wachovia never had control over funds deposited into the accounts at issue, and there is no cause of action for a bank's aiding and abetting a fraudulent transfer. See Perlman v. Wells Fargo Bank, N.A., 2012 WL 3289826, *3 (S.D. Fla. Aug. 10, 2012) (to hold "a bank liable for its customer's deposit into its own accounts would undermine the Florida Supreme Court's demonstration [in Freeman] of "the narrow focus of the FUFTA and its limitations").  Accordingly, Count VI

---

[4] The Receiver conceded this issue *sub silentio* in response to Best's motion to dismiss the original complaint, but still seeks relief against "Defendants" for this claim in his second amended complaint.  (See Docs. 5, 17, and 63.)

must be dismissed to the extent it seeks to recover from Wachovia for the Exhibit B Transfers.

The Receiver also has failed to state a claim for fraudulent transfers relating to the mortgage loans and the Exhibit A Loan Repayments.  First, mortgage loans "are by any definition not investments," and mortgage loan transactions and repayments thereon are not by their nature within the scope of a Ponzi scheme.  In re Pearlman, 440 B.R. 569, 575 (Bankr. M.D. Fla. 2010), aff'd, 478 B.R. 448 (M.D. Fla., Sep. 7, 2012).  Further, the second amended complaint expressly alleges that Wachovia in fact engaged in "enhanced due diligence" pertaining to the mortgage loans, and that at least two of the mortgaged properties generated monthly rental payments well in excess of the monthly mortgage payments made thereon.  (See 2d Am. Compl. ¶¶ 69-70 and compare Ex. A, pp. 1-2 (alleging that monthly rental receipts for the Rite Aid and BB&T properties more than covered the monthly payments on those mortgage loans).)  However, there is nothing in the second amended complaint to support the Receiver's conclusion that the mortgage loans or their repayment were in any way employed "in furtherance" of any Ponzi scheme by Nadel, as needed to justify application of the "Ponzi scheme presumption" of insolvency and fraudulent intent upon which the Receiver relies for this claim.  Compare In

re Pearlman, 440 B.R. at 575-576 and 478 B.R. 454 (finding it plausible that borrower's repayments of mortgage loans were in furtherance of borrower's separate Ponzi scheme because borrower's plea agreement incorporated as an exhibit to the complaint specifically admitted that borrower had made misrepresentations to bank in connection with mortgage loans to get loan funds needed to pay investors victimized by borrower's Ponzi scheme).

Finally, the second amended complaint shows on its face the applicability of the statutory affirmative defense that the mortgage loans were given for value and in good faith.  See § 726.109(1), Fla. Stat.  The second amended complaint affirmatively alleges that Wachovia gave value for the loans by "funding" them in specific amounts.  (See 2d Am. Compl. ¶¶ 68-71.) Moreover, the second amended complaint affirmatively alleges that the bank engaged in "enhanced due diligence" in connection with the loans, but it fails to allege any facts to support the inference that Wachovia acted with knowledge or with "willful ignorance" of Nadel's fraudulent intent.  See supra, pp. 13-15. Accordingly, the defense found in Florida Statutes § 726.109(1) appears on the face of the second amended complaint, and the claims in Count VI relating to the mortgage loans and their repayment should be dismissed.  Cf. Perlman v. Wells Fargo Bank, N.A., 2012 WL 3289826, at *2 (S.D. Fla. Aug 10, 2012) and

Perlman v. Bank of America, N.A., 2012 WL 1886617, at *2 (S.D. Fla. May 23, 2012) (both dismissing fraudulent transfer claims against banks based on "good faith" defense where complaint's allegations failed to overcome O'Halloran presumption that banks are entitled to "assume that the individuals who have the legal authority to handle [an] entity's accounts do not misuse the entity's funds").

**D.  Count VII Fails to State a Claim for Unjust Enrichment.**

Count VII seeks to employ the equitable theory of unjust enrichment to recover from Wachovia two types of fees: (1) fees associated with the so-called "shadow accounts"; and (2) fees associated with the transfers the Receiver contends were fraudulent.  (2d Am. Compl. §139).  This count fails to state a cause of action as a matter of law.  Any fees charged in connection with the deposit accounts or the provision of a banking service cannot be recovered via unjust enrichment because Wachovia's maintenance of the deposit accounts or the provision of services provided consideration for any fees received. Ascencio v. Wells Fargo Bank, N.A., 23 Fla. L. Weekly Fed. D382a (M.D. Fla. Nov. 21, 2012) (citing Baptista v. JP Morgan Chase Bank, N.A., 640 F.3d 1194 (11th Cir 2011)).  With respect to any fees associated with the transfers the Receiver maintains were fraudulent, the Receiver has a legal remedy, whether

based on FUFTA or on the contracts between Wachovia and the "payers" listed for the Exhibit A Loan Repayments (Scoop Real Estate, L.P., Laurel Preserve, LLC, and Nadel).   See, e.g., Fla. Stat. § 726.108(3); Gibson v. Chase Home Finance, LLC, 2012 WL 1094323, at *2 (M.D. Fla., Apr. 2, 2012) (Whittemore, J.).

For all of the foregoing reasons, Defendants seek entry of an order dismissing the Receiver's second amended complaint in its entirety, and, alternatively, dismissing such counts and claims as the Court may determine and striking the references in paragraphs 30-34, 36, 53-54, 60-61, and 75-83 and such other statements therein as refer to anti-money-laundering statutes, regulations and related "best practices," together with such other and further relief as may be available under the circumstances.

s/ Beth A. Cronin
Marvin Barkin, FBN 3564
Dale W. Cravey, FBN 856428
Charles M. Harris, FBN 967459
Beth A. Cronin, FBN 0054933
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.
200 Central Ave., Suite 1600
St. Petersburg, FL 33701
Phone 727.896.7171/Fax 727.822.8048
mbarkin@trenam.com; dcravey@trenam.com;
charris@trenam.com; bcronin@trenam.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, together with a notice of electronic filing of same, has been furnished via the Court's CM/ECF system to Terry A. Smiljanich, Esq., Jonathan B. Cohen, Esq., and Sean P. Keefe, Esq., James Hoyer Newcomer & Smiljanich, P.A., One Urban Centre, Suite 550, 4830 W. Kennedy Blvd., Tampa FL 33609 this 11th day of January 2013.

s/ Beth A. Cronin
Attorney