UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND,
as Court-Appointed Receiver for
SCOOP REAL ESTATE L.P. et al.,

      Plaintiff,

vs.                                  Case No. 8:12-cv-00557-T-27EAJ

WELLS FARGO BANK, N.A., et al.,

      Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Dismiss Plaintiff's Second Amended

Complaint, and to Strike Certain Allegations Therein (Dkt. 66), to which the Receiver has responded

in opposition (Dkt. 68). Upon consideration, the motion (Dkt. 66) is GRANTED *in part* and

DENIED *in part*.

I.     FACTUAL AND PROCEDURAL BACKGROUND

      Arthur Nadel orchestrated a massive Ponzi scheme for ten years before he was caught in

January 2009. His management companies, Scoop Management, Inc. and Scoop Capital, LLC, raised

in excess of $350 million from unwitting investors, purporting to deposit the money in a set of hedge

funds, which he used as his personal bank account. Burton Wiand is the court-appointed receiver for

the hedge funds: Scoop Real Estate, L.P., Valhalla Investment Partners, L.P., Victory IRA Fund,

Ltd., Victory Fund, Ltd., Viking IRA Fund, LLC, and Viking Fund, LLC. In this action, he alleges

that Wells Fargo Bank[1] and Ryan Best gained actual knowledge of Nadel's fraud and substantially assisted Nadel in stealing money from investors.

The initial complaint (Dkt. 2) was dismissed in part (Dkt. 37) for failing to state a claim. Specifically, the Receiver's claims for aiding and abetting common law fraud (Count I), aiding and abetting breach of fiduciary duty (Count II), and aiding and abetting conversion (Count III) were dismissed without prejudice. Also dismissed without prejudice was Count IV for common law negligence, but only as it pertained to Victory IRA Fund, Ltd., Valhalla Investment Partners, L.P., and Viking IRA Fund, LLC. The negligence claims asserted on behalf of Scoop Real Estate, L.P., Victory Fund, Ltd., and Viking Fund, LLC were upheld. Also upheld were the Receiver's claims for fraudulent transfer against Wells Fargo and Best (Count V) and unjust enrichment against Wells Fargo only (Count VI). The Receiver was granted leave to file an amended complaint.

The Receiver then filed a 76-page, 282-paragraph First Amended Complaint (Dkt. 42), which was stricken *sua sponte* as a shotgun pleading and for failing to comply with Federal Rule of Civil Procedure 8(a) (Dkt. 60). The Receiver was granted leave to file a second amended complaint and warned that failure to plead in a manner contemplated by Rule 8 could result in dismissal with prejudice. The Receiver has now filed his Second Amended Complaint (Dkt. 63), and Defendants again move to dismiss all of the claims and to strike certain allegations concerning anti-money laundering statutes, regulations and manuals (Dkt. 66). The Receiver has responded in opposition (Dkt. 68) and filed a Notice of Supplemental Authority (Dkt. 74).

---

[1] On December 31, 2008, Wells Fargo merged with Wachovia and assumed all of Wachovia's liabilities. Prior to that, in 2004, Wachovia assumed the liabilities of SouthTrust Bank. Although Nadel's conduct occurred at SouthTrust and then Wachovia Bank, it is undisputed that Wells Fargo is now responsible for any liability that Wachovia or SouthTrust may have incurred. The Second Amended Complaint refers to the banking institutions collectively as "Wachovia." For ease of reference, this Order will do the same.

## II.   STANDARD OF REVIEW

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not required detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The complaint must contain enough facts to make a claim for relief plausible on its face." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324-25 (11th Cir. 2012). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.*

In *Twombly*, the Supreme Court addressed the well-pleaded, nonconclusory factual allegations of parallel behavior to determine whether they gave rise to a "plausible" suggestion of conspiracy. *Twombly*, 550 U.S. at 565-66.   Although the Court acknowledged that the conduct

3

alleged was consistent with an unlawful agreement, the Court nevertheless concluded that the claims were not plausible because the conduct was more likely explained by other lawful behavior. *Id.* at 567. Therefore, where the allegations of parallel conduct underlying the legal conclusions of a complaint are more likely explained by other lawful behavior, the complaint must be dismissed.

At the motion to dismiss stage, the complaint is construed in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## III.   DISCUSSION[2]

### A.   Counts I through IV - The Aiding and Abetting Claims

Counts I through IV of the Second Amended Complaint are claims for aiding and abetting the tortious activity of Nadel: Count I for his common law fraud, Count II for his breach of fiduciary duty, and Counts III and IV for his conversion. (Count III is brought on behalf of Scoop Real Estate, Victory IRA Fund and Victory Fund, while Count IV is brought on behalf of Valhalla Investment Partners, Viking IRA Fund, and Viking Fund.) Defendants move to dismiss all four counts for failing to state a claim upon which relief may be granted. Because the elements of aiding and abetting are the same for each of these claims,[3] they are considered together. *See Lawrence*, 455 Fed. Appx. at

---

[2]As a preliminary matter, the Second Amended Complaint complies with Rule 8(a) and is not subject to dismissal as a shotgun pleading. The current version of the complaint is shortened substantially from the First Amended Complaint, and wide swaths of allegations are no longer incorporated into each count. Much of the unnecessary commentary has been removed, and factual circumstances repeated *ad nauseum* in the First Amended Complaint have been confined to their appropriate location in the Second Amended Complaint.

[3]*See ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005) (elements of aiding and abetting a fraud under Florida law); *S & B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla, Inc.*, 365 Fed. Appx. 202, 207 (11th Cir. 2010) (elements of aiding and abetting a breach of fiduciary duty under Florida law); *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 906-07 (11th Cir. 2012) (applying the aiding-and-abetting factors to a claim for aiding and abetting conversion). Moreover, although it is not binding authority, in *Lawrence*, the Eleventh Circuit applied the same aiding-and-abetting factors to all three claims for aiding and abetting

4

906 ("Given that all of Plaintiffs' claims are predicated on the theory of aiding and abetting, we need only consider whether Plaintiffs adequately alleged the elements of such a claim.").

A cause of action for aiding and abetting requires "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by alleged aider and abetter [*sic*]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Id.* (citing *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991)); *ZP No. 54*, 917 So. 2d at 372. In actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had "actual knowledge of [the] fraudulent activities." *Id.* Actual knowledge may be shown by circumstantial evidence. *See Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985) (referencing cases in the Rule 10b-5 context for the proposition that "surrounding circumstances and expectations of the parties were critical, because knowledge of the existence of a violation must usually be inferred"); *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 535 (6th Cir. 2000) ("For the purposes of establishing aiding and abetting liability, the requisite intent and knowledge may be shown by circumstantial evidence.") (internal quotations omitted). In addressing aiding-and-abetting liability, courts are "[m]indful of the potentially devastating impact aiding-and-abetting liability might have on commercial relationships." *Woods*, 765 F.2d at 1009; *Leahey Constr.*, 219 F.3d at 534.

### 1.    *Actual Knowledge*

While actual knowledge may be shown by circumstantial evidence, courts "stress that the requirement is *actual* knowledge" and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed. *Leahey Constr.*, 219 F.3d at 536.

---

fraud, conversion, and breach of fiduciary duty. *See* 455 Fed. Appx. at 906-07.

"[E]vidence establishing negligence, i.e., that a bank 'should have known,' will not suffice." *Id.* Plaintiffs alleging aiding-and-abetting liability for a bank's participation in a Ponzi scheme sometimes rely on "red flags" or procedural infirmities that should have alerted the bank to potentially unscrupulous activity by its customer. These "red flags," however, are insufficient to establish a claim for aiding and abetting because "although they may have put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge" of wrongdoing. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006). As a corollary to that proposition, banks that conduct routine banking services, even for transactions or activities that appear atypical upon review, are not required to investigate the account holder's transactions. *Lawrence*, 455 Fed. Appx. at 907 (citing *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968); *O'Halloran v. First United Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003)).

Although *Lawrence* is not binding authority, its factual similarity makes it persuasive when analyzing whether the Receiver's allegations of actual knowledge are plausible. *Lawrence* addressed another highly publicized Ponzi scheme concocted by Beau Diamond. Investors bilked by Diamond's scheme brought suit against Bank of America for aiding and abetting Diamond's fraud. The accounts funded by Diamond and his investors were overseen by Bank of America's Premier Banking Division, which obtained daily updates on transactions and provided in-depth reviews of account activity. Diamond conducted highly atypical and suspicious activity within his Bank of America accounts, including exceptionally large transactions and wire transfers unrelated to any legitimate business activity. Bank of America was also aware of Diamond's suspect personal history and allowed Diamond to operate his accounts as an "investment club," even though Bank of America did not allow investment clubs. Through all of this, the bank continued to do business with Diamond

6

and took no precautionary or preventative measures.

This assortment of atypical transactions and suspicious circumstances invariably led to the conclusion that Bank of America *should have known* of Diamond's Ponzi scheme. Nevertheless, the Eleventh Circuit held that the facts fell short of *Twombly*'s requirement of pleading aiding-and-abetting liability at a level of plausibility. Assessing the allegations concerning the bank's actions, the court held that "Bank of America, in providing only routine banking services, was not required to investigate Diamond's transactions. To be liable, the bank would have had to have actual knowledge of Diamond's fraudulent activities. These allegations simply failed to make that 'plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In this case, the Receiver contends that the facts alleged in the Second Amended Complaint go beyond those stated in *Lawrence* and sufficiently allege that Wachovia had *actual* knowledge of Nadel's underlying fraud, breach of fiduciary duty, and conversion. The Receiver alleges facts that he contends demonstrate the required actual knowledge:

(1) Nadel opened "shadow" accounts titled "Arthur Nadel d/b/a Valhalla Investments" and "Arthur Nadel d/b/a Viking Fund" despite the fact that Nadel did not have authority to act on behalf of the two funds named in those accounts;

(2) Some of the information Nadel provided to Wachovia when opening accounts was inaccurate;

(3) Nadel's account activity reflected "unusual trends [and] patterns of transfers," which the bank should have recognized as suspicious;

(4) Nadel transferred and commingled large amounts of money between accounts held at Wachovia, including between individual, non-profit, and business accounts;

(5) Nadel transferred money from Goldman Sachs trading accounts to Wachovia "shadow"

accounts that did not match the originating Goldman Sachs account;

(6) Wachovia "participated" in two "derivative transaction[s] related to" investments in Scoop Real Estate and Viking Fund made by an "affiliate" of the bank;

(7) Wachovia reviewed the personal and financial history of Nadel prior to funding mortgages for him;

(8) Wachovia's private banking group received reports alerting them to over 200 transactions involving Nadel valued over $25,000; and

(9) Nadel's transactions triggered Wachovia's fraud alert system.

*See* Dkt. 63 ¶¶ 89, 101, 108, 115.

Considering *Lawrence*, notwithstanding these detailed factual allegations, the Second Amended Complaint does not state a claim for aiding-and-abetting liability and Counts I through IV must therefore be dismissed. Essentially, the facts the Receiver relies on are no more than "red flags." Cases addressing the liability of banks for Ponzi schemes consistently hold that "red flags" arising from suspicious activity giving rise to the presumption that the bank *should have known* about the Ponzi scheme are insufficient to allege aiding-and-abetting liability. *See, e.g., Lerner*, 459 F.3d at 294 (under New York law, "red flags" were "insufficient to establish a claim for aiding and abetting fraud because, although they may have put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge.").[4] The factual allegations with which the Receiver attempts to establish actual knowledge reflect nothing more than Wachovia should have known that Nadel was improperly using his accounts to

___

[4]*See also Lamm v. State Street Bank & Trust Co.*, 889 F. Supp. 2d 1321 (S.D. Fla. 2012) ("[A]llegations that a bank's disregard of 'obvious red flags' such as atypical and non-routine banking transactions were insufficient to establish the conscious awareness of wrongdoing necessary to maintain an aiding and abetting cause of action."); *Perlman v. Bank of Am., N.A.*, No. 11-80331-CV, 2012 WL 1886617, at *1 (S.D. Fla. May 23, 2012) ("Because banks have no duty to investigate even suspicious transactions, allegations of such transactions do not demonstrate the actual knowledge required for aiding and abetting claims.").

fleece third parties.

The only factual allegation approaching actual knowledge is Wachovia's "participation" in certain hedge funds, but even that allegation falls flat. In Paragraphs 63 and 64, the Receiver alleges that Wachovia "participated" in "derivative transactions" which were "related to" Scoop Real Estate and Viking Fund through an "affiliate" of the bank. These paragraphs provide no details concerning the affiliate, the transactions, the information received, or how the transactions were related to the hedge funds. The paragraphs fail to plausibly allege that Wachovia had actual knowledge of Nadel's wrongdoing through participation in the investments.

Unable to plead actual knowledge, the Receiver posits an alternative argument: actual knowledge may be alleged through facts demonstrating "reckless conduct." This contention is rooted in *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004 (11th Cir. 1985), and *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir. 1975).[5] Neither case, however, addresses aiding-and-abetting liability under Florida law. Rather, both cases address attempts to hold banks liable for aiding and abetting violations of Rule 10b-5. *See Woods*, 765 F.2d at 1009; *Woodward*, 522 F.2d at 86. The Receiver's claims in this case are rooted in Florida tort law, not federal securities laws, however. And the requirement of actual knowledge has long been a part of Florida law.

In 1929, the Supreme Court of Florida established the general rule that aiders and abettors are liable in tort if they "participat[ed]" with "knowledge of the fraud." *Ft. Myers Dev. Corp. v. J.W. McWilliams Co.*, 122 So. 264, 268 (Fla. 1929). Intermediate appellate decisions in Florida have consistently applied the requirement of actual knowledge to claims of aiding and abetting and have never indicated that recklessness would suffice. *See ZP No. 54*, 917 So. 2d at 372; *James v. Nationsbank Trust Co. (Fla.) Nat'l Ass'n*, 639 So. 2d 1031, 1032-33 (Fla. 5th DCA 1994) (rejecting

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

plaintiff's allegation that the bank was "aware" of the fraudulent activities as a basis for aiding-and-abetting or conspiracy liability). Additionally, one Florida court referenced Section 876 of the Restatement (Second) of Torts as authority for aiding-and-abetting liability. *See Kilgus v. Kilgus*, 496 So. 2d 1230, 1231 (Fla. 5th DCA 1986). Section 876 requires that the defendant "knows that the other's conduct constitutes a breach of duty." The commentary to Section 876 reinforces the knowledge requirement, never referring to reckless conduct. Accordingly. There is no authority in Florida tort law for imposing aiding-and-abetting liability on a bank that is reckless but lacks actual knowledge of an underlying wrong.

As the Receiver has failed to allege actual knowledge on the part of Wachovia, the substantial assistance prong need not be reached, and Counts I through IV should be dismissed.

## B.   Count V - Negligence

### 1.   *The Receiver States a Claim for Negligence on Behalf of the Customer Hedge Funds.*

"To maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Fla. Dep't of Corrs. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007). Banks owe a duty to customers. *See 533 Harbor Court, LLC v. Colonial Bancgroup, Inc.*, No. 08-80824-CIV, 2009 WL 455434, at *2 (S.D. Fla. Feb. 23, 2009). In the order dismissing in part the original complaint, the negligence claim made on behalf of the customer hedge funds – Victory Fund, Ltd. and Scoop Real Estate, L.P. – was upheld because Wachovia owed a duty to those hedge funds as its customers (Dkt. 37 at 4-5). Wachovia now argues that the customers' negligence claim is barred by the economic loss rule. That argument must be rejected in light of the Florida Supreme Court's recent decision that the economic loss rule applies only to products liability claims. *Tiara Condo Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, ___ So. 3d ___, No. SC10-1022, 2013 WL 828003, at *8 (Fla. Mar. 7, 2013).

### 2. *The Receiver Does Not State a Claim for Negligence on Behalf of the Non-Customer Hedge Funds.*

On the other hand, banks generally do not owe non-customers a duty to protect them from fraud perpetrated by customers. *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 Fed. Appx. 17, 20 (2d Cir. 2011); *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002); *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005), *aff'd* 538 F.3d 71 (2d Cir. 2008). Nevertheless, courts have recognized a narrow exception to this rule "when a bank fails to act to safeguard trust funds on deposit in a fiduciary account after receiving 'clear evidence' of misappropriation." *MLSMK Inv.*, 431 Fed. Appx. at 20 (citing *Lerner*, 459 F.3d at 295). The Fifth Circuit deconstructs this exception into three elements: (1) there is a fiduciary relationship between the customer and the non-customer, (2) the bank knows or ought to know of the fiduciary relationship, and (3) the bank has actual knowledge or notice that a diversion is to occur or is ongoing. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 232 (5th Cir. 2010). To satisfy the second element, "the facts [must] support the 'sole inference' that the funds being deposited are held in a fiduciary capacity." *Id.*

The order dismissing the initial complaint (Dkt. 37) found that Defendants did not owe a duty of care to the non-customer hedge funds because the Complaint did not contain any facts alleging that Defendants were aware that Nadel stood in a fiduciary relationship with those funds. The Second Amended Complaint has rectified that shortcoming by alleging that a risk assessment procedure informed Wachovia and Best that Nadel owned Scoop Capital and Scoop Management and managed the hedge funds (Dkt. 63 ¶ 72). The Receiver also alleges that a former relationship manager employed by Wachovia and charged with handling Nadel's accounts knew that Nadel was a hedge fund manager with a fiduciary relationship to each of the hedge funds (*id.* ¶ 43).

11

Despite this clarification, the Receiver still fails to state a claim for negligence on behalf of the non-customer funds because the Second Amended Complaint does not satisfy the third element of the exception, that Wachovia had actual knowledge or notice that a diversion occurred. "It is only when the bank knows that an actual misappropriation is intended or is in progress" that it can be held liable for conducting regular business. *Atlanta & St. A.B. Ry. Co. v. Barnes*, 95 F.2d 273, 276 (5th Cir. 1938). *Barnes* also indicates that willful ignorance of the underlying misappropriation may imply sufficient notice to lay blame on the bank. *Id.* Proof of the bank's knowledge or notice of a diversion requires "clear evidence" of misappropriation. *See MLSMK Inv.*, 431 Fed. Appx. at 20. Simple negligence of the bank in failing to discover the underlying fraud is not sufficient to state a claim. *Barnes*, 95 F.2d at 278.

The Receiver argues that four allegations constitute "clear evidence" that Wachovia had knowledge of the misappropriation or willfully ignored the circumstances that would have provided knowledge: (1) commingling of funds between personal and business accounts; (2) transfers of funds to Nadel's personal d/b/a accounts; (3) routine transfers in large, rounded denominations; and (4) Wachovia's knowledge of Nadel's personal background. None of these facts, however, are sufficient to allege that Wachovia had knowledge of Nadel's fraud.

Commingling of funds, even where the bank knows that the customer holds the funds in a fiduciary or trust capacity, is not necessarily prohibited and is insufficient to allege knowledge of an underlying fraud. *Id.* at 275 ("The bank may and should assume the customer's honesty and correct conduct of his business. That a trustee, with the bank's knowledge, deposits trust money in his individual account it [*sic*] not always nor ipso facto a conversion of it."). Transfers to d/b/a accounts, even if fraudulently created, also do not confer knowledge of an underlying fraud. *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002) ("[B]anks do not owe a duty of care to non-

customers even when the noncustomer is the person in whose name an account was fraudulently opened."). And the Second Circuit has explicitly held that "isolated transfers of money, even in large sums," does not constitute "clear evidence" of misappropriation. *MLSMK Inv.*, 431 Fed. Appx. at 20. Finally, Wachovia's knowledge of Nadel's background could not plausibly alert it to an underlying fraud. *See Lawrence*, 455 Fed. Appx. at 907 (suggesting that a suspect personal history is insufficient to confer knowledge). The Second Amended Complaint does not provide a plausible factual basis to conclude that Wachovia "[knew] that an actual misappropriation is intended or is in progress," and therefore fails to state a negligence claim on behalf of the non-customer hedge funds.

### C.    Count VI - Fraudulent Transfer

#### 1.    *The Second Amended Complaint Fails to State a Claim for Fraudulent Transfer Against Best.*

Defendants first argue that Count VI must be dismissed as to Best because the Second Amended Complaint does not allege any transfer made to Best (Dkt. 66 at 19). The Receiver does not address this argument in his response. Count VI does not include any allegations of fraudulent transfers made to Best, and even if the Second Amended Complaint can be read to allege that Best assisted in fraudulently transferring funds, Count VI still fails to state a claim because there is no cause of action for aiding and abetting a fraudulent transfer when the alleged aider-and-abettor is not a transferee. *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1275 (Fla. 2004).

#### 2.    *The Receiver States a Claim Against Wachovia for Fraudulent Transfer.*

Although the Second Amended Complaint alleges that Wachovia received fraudulent transfers, Wachovia asserts three reasons why the Receiver has failed to state a claim under Florida's fraudulent transfer statute. First, Wachovia argues that it cannot be liable for fraudulent transfers because it was a "mere conduit" of the funds employed in the Ponzi scheme. The conduit rule is an affirmative defense to fraudulent transfer liability and requires a defendant to "establish (1) that [it]

13

did not have control over the assets received, i.e., that [it] merely served as a conduit for the assets that were under the actual control of the [transferor] and (2) that [it] acted in good faith and as an innocent participant in the fraudulent transfer." *In re Harwell*, 628 F.3d 1312, 1323 (11th Cir. 2010). In evaluating the bank's good faith, "the relevant question is whether it had actual knowledge of the debtor's fraudulent purpose or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the transferor's fraudulent purpose.'" *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) (quoting *United States v. Romano*, 757 F.Supp. 1331, 1338 (M.D. Fla. 1989)).

While it is generally true that an affirmative defense may not be considered on a motion to dismiss, dismissal may be appropriate when "the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004) (internal quotations omitted). The Receiver's allegations of red flags and fraud alerts, however, plausibly raise the question of whether Wachovia "had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry." *Waxenberg*, 611 F. Supp. 2d at 1319. Wachovia's status as a mere conduit of the Ponzi scheme proceeds, therefore, is not "affirmatively and clearly" shown by the Second Amended Complaint and dismissal is not appropriate.

Second, Wachovia argues that the Receiver has not plausibly pleaded that the mortgage loans extended by Wachovia to Nadel were employed in furtherance of the Ponzi scheme. This argument is also unpersuasive. All that the Receiver is required to allege is that the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a). The Second Amended Complaint, viewed in the light most favorable to the Receiver,

contains sufficient allegations that payments on the mortgage loans were employed to defraud creditors of Nadel during the Ponzi scheme and that the mortgages were taken out in a continued attempt to inject capital into the Ponzi scheme to defraud creditors (*see* Dkt. 63 ¶¶ 69, 70, 73, 74, 128, 129, 132).

Finally, Wachovia argues that the affirmative defense to fraudulent transfer liability found at § 726.109(1), *Florida Statutes*, requires dismissal. Under that section, a transfer is not voidable "against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *Id.* The Receiver alleges facts suggesting that Wachovia was on inquiry notice of Nadel's fraud, and those allegations are sufficient to withstand the application of § 726.109(1). *See Waxenburg*, 611 F. Supp. 2d at 1319; *In re Revels*, No. 05-13351-3P7, 2007 WL 1756987, at *7 (Bankr. M.D. Fla. Jan. 31, 2007). At a minimum, this defense does not affirmatively and clearly appear on the face of the Second Amended Complaint. The Second Amended Complaint states a claim for fraudulent transfer against Wachovia.

### D.   Count VII - Unjust Enrichment

The elements of a cause of action for unjust enrichment are: (1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. 3d DCA 2011) (citing *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672 (Fla. 2d DCA 2000)). The Second Amended Complaint alleges the required elements, but Defendants argue that the claim fails because fees charged in connection with the deposit accounts cannot be recovered through an unjust enrichment claim, and because the Receiver has a legal remedy. Neither argument is persuasive.

In the order dismissing in part the original complaint, the unjust enrichment claim was upheld, and no novel or additional basis has been presented to disturb that ruling. The Receiver has sufficiently stated a claim for unjust enrichment. *See Challenge Air Transport, Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So. 2d 323, 324-25 (Fla. 3d DCA 1988) ("An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity."); *Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*, 690 F.3d 1216, 1227-28 (11th Cir. 2012) (plaintiff may plead equitable claims in the alternative and then elect at trial under which remedy it wants to proceed).

### E. Motion to Strike

A court may "strike from a pleading" any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of this Rule is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Slone v. Judd*, No. 8:09-cv-1175-T-27TGW, 2009 WL 5214984, at *1 (M.D. Fla. Dec. 29, 2009) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)). Motions to strike are generally disfavored, *id.*, and are considered to be a "drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962). Nevertheless, district courts have broad discretion in determining whether to grant a motion to strike. *Slone*, 2009 WL 5214984, at *1 (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)).

Defendants argue that material in the Second Amended Complaint "relating to the statutory and regulatory scheme and bank examiner practices" is immaterial and unnecessarily incorporated by reference into the causes of action. Defendants have not specified the allegations to be stricken,

nor have they explained why the allegations are "redundant, immaterial, impertinent, or scandalous." Upon consideration of the Second Amended Complaint as a whole, allegations concerning the regulatory scheme in which banks operate are not immaterial to the claims asserted, and no reason has been shown to invoke the "drastic remedy" of striking those allegations.

Accordingly,

1) Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, and to Strike Certain Allegations Therein (Dkt. 66) is GRANTED *in part* and DENIED *in part*.

2) Counts I, II, III, and IV are DISMISSED *with prejudice*.[6] Count V is DISMISSED *with prejudice* as to claims brought by the non-customer hedge funds Valhalla Investment Partners, L.P., Victory IRA Fund, Ltd., Viking IRA Fund, LLC, and Viking Fund, LLC. Count VI is DISMISSED *with prejudice* as to Defendant Timothy Ryan Best.

3) In all other respect, the motion (Dkt. 66) is DENIED.

4) Defendants shall file an answer to the Second Amended Complaint within **fourteen (14) days** of the date of this order.

**DONE AND ORDERED** this 4ᵗ day of April, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[6]Dismissal with prejudice is appropriate on an unsuccessful third attempt to plead the same cause of action. *See Hasbun v. Recontrust Co., N.A.*, No. 11-15214, 2013 WL 531071, at *1 (11th Cir. 2013); *Nettles v. City of Leesburg–Police Dep't*, 415 Fed. Appx. 116 (11th Cir. 2010); *Anderson v. Vanguard Car Rental USA, Inc.*, 304 Fed. Appx. 830 (11th Cir. 2008).