# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BURTON W. WIAND, ESQ., as
Court-Appointed Receiver for
SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT
PARTNERS, L.P., VICTORY IRA
FUND, LTD., VICTORY FUND, LTD.,
VIKING IRA FUND, LLC, and
VIKING FUND, LLC,

      Plaintiff,                            CASE NO.: 8:12-cv-00557-JDW-EAJ

  v.

WELLS FARGO BANK, N.A., as
successor-in-interest to Wachovia Bank, N.A.
and Timothy Ryan Best,

      Defendants.

_____/

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION, AND INCORPORATED MEMORANDUM OF LAW AND LOCAL RULE 3.01(G) CERTIFICATE

Defendants Wells Fargo Bank, N.A. as successor by merger with Wachovia Bank,

N.A. ("Wachovia") and Timothy Ryan Best, through their counsel and pursuant to Rule 37 of

the Federal Rules of Civil Procedure, hereby move this Court to compel Plaintiff Burton W.

Wiand, Esq. as receiver (the "Receiver") for Scoop Real Estate, L.P., Valhalla Investment

Partners, L.P., Victory IRA Fund, Ltd., Victory Fund, Ltd., Viking IRA Fund, LLC and

Viking Fund, LLC (the "Hedge Funds") to produce documents responsive to Defendants'

First Request for Production as set forth herein.

### A. Rules Governing Discovery

Rule 26(b)(1) provides that "parties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense."

1. <u>The Requirement of a Privilege Log</u>

Subsection (b)(5) of Rule 26 further provides that:

> [w]hen a party withholds information otherwise discoverable by claiming
> that the information is privileged …, the party must: (i) expressly make
> the claim; and (ii) describe the nature of the documents, communications
> or tangible things not produced or disclosed – and do so in a manner that,
> without revealing information itself privileged or protected, will enable
> other parties to assess the claim.

The party who asserts a privilege bears the burden of proving that the privilege applies to the

discovery withheld. *Royal Marco Point 1 Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2010 WL

5161111, *2 (M.D. Fla. Dec. 14, 2010) (internal citations omitted).   Failure to produce an

adequate privilege log may result in the waiver of the privileges asserted. *See Anderson v.

City of Naples*, 2010 WL 4853916, *3 (M.D. Fla. Nov. 22, 2010).

2. <u>Confidential Information is not Privileged Information</u>

Confidential information is not, in and of itself, privileged information. *Richardson v.

Sexual Assault/Spouse Abuse Research Ctr., Inc.*, 270 F.R.D. 223, 227-28 (D. Md. 2010)

(citations omitted); *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 426, 430 (D. Kan.

2007) (a concern for protecting confidentiality does not equate to privilege) (citation omitted).

       3.  <u>Information in Party's Possession, Custody or Control Must be Produced</u>

Objections to production based on the fact that the information requested may be retrieved from the public record or another third party are not valid objections. *Pepperwood of Naples Condo. Ass'n*, 2011 WL 3841557, at *4 (M.D. Fla. Aug. 29, 2011) ("Courts have unambiguously stated that this exact objection is insufficient to resist a discovery request.") (citations omitted); *Jackson v. W. Virginia Univ. Hospitals, Inc.*, 1:10CV107, 2011 WL 1831591, *2 (N.D.W. Va. May 12, 2011); *Benedict Coll. v. Nat'l Credit Sys., Inc.*, CA 3:08-2520-JFA, 2009 WL 3839473, *6 (D.S.C. Nov. 16, 2009); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000). Likewise, an objection that the information requested is in the requesting party's possession is not a valid objection. *Gomez v. Tyson Foods, Inc.*, 8:08CV21, 2012 WL 3111897, *4 (D. Neb. July 31, 2012) ("[A]n objection based on information that the moving party is already in possession of documents it seeks to obtain by inspection, is an insufficient response to requests for production; a party is required to produce documents in its possession, custody, or control, regardless of whether it believes the requesting party already has those documents."); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 440 (W.D.N.Y. 2004); *Fort Washington Res., Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994).

4.  Discovery Related to Allegations in Original or First Amended Complaint Permissible

Discovery into allegations withdrawn from a party's amended pleading is relevant and permissible. *Tallman v. Freedman Anselmo Lindberg LLC*, 11-CV-3201, 2012 WL 1108641, *1-*2 (C.D. Ill. Apr. 2, 2012) (compelling production from party that objected to discovery regarding allegations in original complaint because party made the information relevant to the litigation when it made the allegations); *see also In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. 2007) (compelling response to interrogatory for information related to allegation that was removed from amended complaint).

**B.  Defendants Move this Court to Compel the Receiver to Produce Documents Responsive to Their First Request for Production.**

Defendants seek entry of an Order compelling the Receiver to produce documents responsive to each of the following requests, to which the Receiver has responded as indicated:

1.  Request No. 1

Copies of all affidavits, declarations, or other sworn written statements of, and all transcripts of oral testimony given by, the Receiver in each lawsuit described in Interrogatory 1 of Wells Fargo's First Set of Interrogatories, served contemporaneously herewith.

**Response**: The Receiver objects to this request as overbroad, unduly burdensome, intended to harass, irrelevant and vague because the request is unlimited as to time and the subject matter of the documents sought and fails to identify any particular lawsuit(s) from which Defendants are seeking the identified categories of documents.  Accordingly, the Receiver cannot determine the scope of or properly respond to the request, which seeks documents that are not relevant to this suit and not reasonably calculated to lead to the discovery of such evidence.  The Receiver further objects to this request because it seeks documents that are within the public record and which are just as searchable, identifiable and locatable by the propounding party as they are for the Receiver to whom it is directed.

The Request is reasonably limited because it seeks transcripts of oral testimony and sworn written statements by the Receiver in his role as the Receiver for the Hedge Funds in those lawsuits he has initiated as Receiver for the Hedge Funds.  It is not proper to withhold production of documents because the requesting party may obtain the information from another source.  *See Pepperwood of Naples Condo. Ass'n*, 2011 WL 3841557, at *4.  It is absurd for the Receiver to contend that the burden on Defendants to seek out responsive documents through searches of the public records is equivalent to the burden on the Receiver to seek out responsive documents contained in the Receiver's own records for the Receivership.  Accordingly the Court should order the Receiver to produce responsive documents.

       2.  <u>Request No. 2</u>

All documents relating or referring to the matters described in paragraphs 12 and 24 of the Declaration of Burton W. Wiand filed in the case styled *Securities and Exchange Comm'n v. Nadel, et al.*, Case No. 8:09-cv-00087-RAL-TBM pending in the United States District Court for the Middle District of Florida (the "Receivership Case") on March 14, 2012, Docket No. 787, including specifically all documents that relate to or refer to any facts that the Receiver contends support the statements in those paragraphs of the Receiver's declaration.

**Response**: The Receiver objects to this request to the extent that it seeks disclosure of documents subject to the attorney-client privilege and/or work product doctrine and that are not relevant to this suit, nor reasonably calculated to lead to the discovery of such evidence. The Receiver further objects to this request to the extent that it seeks documents otherwise believed to be within the possession, custody or control of Defendant and/or its counsel.

The information requested is relevant to the claims and defenses in this case.  This request seeks only an explanation of a very specific fact allegation that the Receiver first made in support of his proposal to assert these claims against Wachovia in this case, and later

incorporated into his pleadings in this case. It is not a valid basis to withhold production because the information may be in Wachovia's possession. *Gomez*, 2012 WL 3111897, at *4. Therefore, the Court should compel the Receiver to produce documents responsive to this request, and produce a log identifying privileged information withheld from production.

      3.  Request No. 3

All documents produced by any individual or entity in response to any subpoena or discovery request issued by or at the request of the Securities and Exchange Commission (hereinafter the "SEC") in the Receivership Case, along with a copy of each such subpoena and any written response(s) or correspondence pertaining thereto.

**Response**: The Receiver objects to this request as unduly burdensome, overbroad, intended to harass, irrelevant and vague because the request is unlimited as to time or the subject matter of the documents sought and fails to identify any particular individual or entity whose subpoena, written response(s) and document production is sought. Accordingly, the Receiver cannot determine the scope of or properly respond to the request, which seeks documents that are not relevant to this suit and not reasonably calculated to lead to the discovery of such evidence. The Receiver further objects to this request to the extent that it seeks disclosure of private, sensitive, confidential and/or proprietary information and to the extent that it seeks documents not in the Receiver's possession, custody or control.

The information requested is relevant to the claims and defenses in this case. Production of these documents is likely to reveal, *inter alia*, the extent to which there were or were not innocent persons in management of Scoop Real Estate, L.P. and Victory Fund, Ltd., and the identities and proof of liability of potential *Fabre* defendants, as well as information concerning the operation of the Hedge Fund entities that potentially may be relevant to the Receiver's contention that Wachovia was unjustly enriched or failed to engage in transactions in good faith. The Receiver's allegations in the Second Amended Complaint are sufficiently broad-ranging as to encompass the subject matter underlying the investigation

into Nadel's alleged Ponzi scheme.   Therefore, the Court should compel the Receiver to

produce documents responsive to this request, and to contemporaneously produce a log

identifying privileged information withheld from production.

4.   Request No. 5

All documents produced by any individual or entity in connection with the case styled United States of America v. Nadel, Case No. 1:09mj169, in the United States District Court for the Southern District of New York.

**Response**: The Receiver objects to this request as unduly burdensome, overbroad, intended to harass, irrelevant and vague because the request is unlimited as to time or the subject matter of the documents sought and fails to identify any particular individual or entity whose document production is sought or to whom the requested document production was made. Accordingly, the Receiver cannot determine the scope of or properly respond to the request, which seeks documents that are not relevant to this suit and not reasonably calculated to lead to the discovery of such evidence.  The Receiver further objects to this request to the extent that it seeks disclosure of private, sensitive, confidential and/or proprietary information and to the extent that it seeks documents not in the Receiver's possession, custody or control.

The information requested is relevant to the claims and defenses in this case for all of

the same reasons the information requested in the foregoing Request No. 3 is relevant.

Therefore, the Court should compel the Receiver to produce documents responsive to this

request and produce a log identifying privileged information withheld from production.

5.   Request No. 6

All documents produced by or to the Receiver in connection with the lawsuit styled Burton W. Wiand v. Holland & Knight LLP, known by Case No. 2009-CA-014887-NC while it was pending in the Circuit Court for the Twentieth Judicial Circuit in and for Sarasota County, Florida and by Case No. 8:09-cv-1992 while it was pending in the United States District Court for the Middle District of Florida (hereinafter, the "Holland & Knight Litigation"), including but not limited to documents produced by non-parties to the Holland & Knight Litigation.

**Response**: The Receiver objects to this request as unduly burdensome, overbroad, intended to harass, irrelevant and vague because the request is unlimited as to time or the subject matter of the documents sought and fails to identify any party or non-party whose document production is sought or to whom the document production request was directed. Accordingly, the Receiver cannot determine the scope of or properly respond to the request, which seeks documents that are not relevant to this suit and not reasonably calculated to lead to the discovery of such evidence. The Receiver further objects to this request because it seeks disclosure of private, sensitive, confidential and/or proprietary information, which is prohibited from disclosure pursuant to the terms of a standing confidentiality agreement entered by the parties in the Holland & Knight Litigation and applicable to production irrespective of the producing party.

The information requested is relevant to the claims and defenses in this case. Production of these documents is likely to reveal, *inter alia*, the extent to which there were or were not innocent persons in management of Scoop Real Estate, L.P. and Victory Fund, Ltd., and the identities and proof of liability of potential *Fabre* defendants, as well as information concerning the operation of the Hedge Fund entities that potentially may be relevant to the Receiver's contention that Wachovia was unjustly enriched or failed to engage in transactions in good faith. There is a confidentiality agreement in place in this lawsuit, and the Receiver's should not be permitted to circumvent his obligation to engage in discovery in this case merely by asserting that he has entered into a "standing agreement" with a party in another case that purportedly protects and shields from disclosure every document produced in discovery in that other case, without regard to whether or not such documents are actually deserving of any protection from disclosure. Therefore, the Court should compel the Receiver to respond to this request and contemporaneously produce a log identifying any privileged information withheld from production.

6.   Request No. 12

All transcripts of any interview or deposition of any Wachovia employee or former employee or any sworn statement provided by any Wachovia employee or former employee in connection with Nadel, the Moodys, the Hedge Funds or the Management Companies.

**Response**: The Receiver objects to this request as unduly burdensome and intended to harass because the transcripts of all depositions of Wachovia employees and former employees taken in connection with this litigation are available from the court reporters who transcribed any such depositions and such transcripts are otherwise believed to be within the possession, custody or control of Defendant and/or its counsel.

The Court should compel production from the Receiver because his objections have no merit. *Gomez*, 2012 WL 3111897, at *4 (not a valid objection that information may be in requesting party's possession); *Pepperwood of Naples Condo. Ass'n*, 2011 WL 3841557, at *4 (not a valid objection that information available from another source).  There is no basis for the Receiver's contention that Wachovia already has transcripts or copies of sworn statements or would know whom to contact to secure them.

7.   Request Nos. 15-20, 23-27, 30-71, 73-77, 93, and 97

15: All documents that refer to or relate to any fact underlying the assertion in paragraph 3 of the Amended Complaint that Wachovia knew that Nadel opened two personal bank accounts using a "doing business as" moniker so he could steal from the Hedge Funds, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who knew such fact(s) and when and how such individual(s) learned such fact(s).

16: All documents that refer to or relate to any fact underlying the assertion in paragraph 4 of the Amended Complaint that Wachovia had knowledge that it deposited money intended for specific Hedge Funds into Nadel's personal accounts so that the funds could be converted by Nadel, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who knew such fact(s) and when such individual(s) learned such fact(s).

17: All documents that refer to or relate to any fact underlying the assertion in paragraph 4 of the Amended Complaint that Wachovia "repeatedly assisted Nadel in converting and stealing funds from Hedge Fund entities and their innocent investors," including but not limited to

documents that reflect the identity of the individual(s) at Wachovia who provided the alleged assistance to Nadel and when and how such individual(s) assisted Nadel.

18: All documents that refer to or relate to any fact underlying the assertion in paragraphs 4 and 157 of the Amended Complaint that Wachovia mailed the monthly statements for Nadel-related accounts to Nadel's personal post office box instead of to the Hedge Funds' street address to "ensure that no one other than Nadel and Wachovia itself knew of [Nadel's] theft" and to "ensure that [the referenced accounts and transactions] were unknown to anyone other than Nadel and Wachovia," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who acted with the purpose or objective attributed to Wachovia in those assertions.

19: All documents that refer to or relate to any fact underlying the assertion in paragraph 6 of the Amended Complaint that "[t]he Bank participated in investments in Nadel's criminal enterprise," including but not limited to documents that reflect the name of the entity that participated in the investments, the amount of the investment, the form of the investment, the date of the investment, and the recipient of the investment.

20: All documents that refer to or relate to any fact underlying the assertion in paragraph 6 of the Amended Complaint that "[t]he Bank helped fund the fraud through the lending of money," including but not limited to documents that refer to or relate to the use of any funds loaned by the Bank to fund a fraud, and any and all documents that refer to or relate to anyone at the Bank having any knowledge of or reason to suspect that any loaned funds were intended or were used to fund a fraud.

23: All documents that refer to or relate to the assertion in paragraph 6 of the Amended Complaint that Wachovia "directly profited and benefited to a great extent from Nadel's fraud unlike other typical commercial banking relationships with Ponzi schemes," including but not limited to documents that refer to or relate to any benefit, including but not limited to monetary gain, that Wachovia received as a result of any fraud by Nadel.

24: All documents that refer to or relate to the assertion in paragraph 7 of the Amended Complaint that Wachovia and Best knowingly permitted Nadel to improperly use personal and other bank accounts to convert money from the Hedge Funds, including but not limited to documents that reflect that Wachovia or Best knew about or suspected any instance of improper use by Nadel of any deposit account, loan or other product or service offered by Wachovia.

25: All documents that refer to or relate to the assertion in paragraph 8 of the Amended Complaint that Wachovia and Best knew that Nadel was stealing from and defrauding the Hedge Funds, including but not limited to documents that reflect the identity of the

individual(s) at Wachovia who had such knowledge and when and how such individual(s) gained such knowledge.

26: All documents that refer to or relate to the assertions in paragraph 10 of the Amended Complaint that Wachovia involved itself in Nadel's fraud by participating in investments in the Hedge Funds, including but not limited to documents that show the amount of the investment(s), the date of the investment(s), the form of the investment(s), which of the Hedge Funds was involved, any returns on the investment(s), if the investment(s) was/were terminated, when the investment(s) was/were terminated, how the investment(s) was/were terminated, and documents that reflect any communication to or by Wachovia Bank, N.A. or SouthTrust that refers to or relates to the investment(s), and any communication to, by, or with Nadel that refers to or relates to the investment(s).

27: All documents that refer to or relate to the assertion in paragraph 10 of the Amended Complaint that Wachovia "cashed out" of the investments immediately before the collapse of Nadel's scheme, including but not limited to documents that reflect the identity of any individuals involved and the dates of such transactions.

30: All documents that refer to or relate to the assertion in paragraph 29 of the Amended Complaint that Nadel's former relationship manager confirmed Wachovia's knowledge that Nadel was a hedge fund investment advisor and had a fiduciary duty to each of the Hedge Funds, including but not limited to documents that reflect the identity of said former relationship manager, and documents that reflect how and when this knowledge was obtained, and by whom at Wachovia.

31: All documents that refer to or relate to the assertion in paragraph 29 of the Amended Complaint that Wachovia had knowledge that the account titled "Arthur Nadel DBA Valhalla Investments" was being opened for the purpose of converting the limited partnership's corporate funds for Nadel's individual benefit and use, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, and how and when each such individual learned information resulting in such knowledge.

32: All documents that refer to or relate to the assertions in paragraphs 40, 120 and 191 of the Amended Complaint that Wachovia invested in and became a limited partner in Viking Fund, LLC including but not limited to documents that show amount of the investment(s), the date of the investment(s), the form of the investment(s), if, when and how the investment(s) was/were terminated, when the investment(s) was/were terminated, and documents that reflect any communication to or by Wachovia Bank, N.A. or SouthTrust that refers to or relates to the investment(s), and any communication to or by Nadel that refers to or relates to the investment(s).

33: All documents that refer to or relate to the Receiver's assertions in footnote 3 and paragraphs 77 and 186 of the Amended Complaint that Wachovia invested and became a limited partner in Scoop Real Estate, L.P., including but not limited to documents that show the amount of the investment(s), the date of the investment(s), the form of the investment(s), if, when and how the investment(s) was/were terminated, when the investment(s) was/were terminated, and documents that reflect any communication to or by Wachovia Bank, N.A. or SouthTrust that refers to or relates to the investment(s) or limited partnership interest, and any communication to or by Nadel that refers to or relates to the investment(s) or limited partnership interest.

34: All documents that refer to or relate to the assertions in paragraph 106 of the Amended Complaint that Wachovia had knowledge of Nadel's criminal activities and "was alerted to this through its own internal fraud alert systems," including but not limited to documents that reflect when and how this knowledge was acquired, the identity of the individual(s) at Wachovia who acquired the knowledge, to whom at Wachovia such knowledge was communicated, what internal fraud alert systems alerted Wachovia to Nadel's criminal activities, the date of the alert, who received the alert, the form of the alert, and the information communicated by the alert to the individual(s) receiving the alert.

35: All documents that refer to or relate to the assertions in paragraph 107 of the Amended Complaint that Wachovia "knew there was no legitimate reason for monies belonging to one Hedge Fund to be transferred to a separate and unrelated Fund," including but not limited to documents that show when and how Wachovia gained this knowledge and the name of the individual(s) at Wachovia who gained this knowledge.

36: All documents that refer to or relate to the assertion in paragraph 118 of the Amended Complaint that Wachovia implemented the referenced policy and procedure "because allowing a customer to open an account without the authority to do so would result in Wachovia's knowing assistance with the conversion of funds," including without limitation documents that reflect the asserted reason behind implementation of the policy.

37: All documents that refer to or relate to the assertion in paragraph 136 of the Amended Complaint that Wachovia knowingly deposited funds belonging to third parties into Nadel's personal accounts, including but not limited to any and all documents that show the date of any such deposit and the name of the individual(s) at Wachovia who assisted with any such deposit knowing that the deposits were funds belonging to third parties.

38: All documents that refer to or relate to the assertion in paragraph 140 of the Amended Complaint that Wachovia, at the time Nadel opened the account described in paragraph 139 of the Amended Complaint, knew about the existence of the Valhalla Investments entity, including but not limited to documents reflecting the identity of the individual(s) who had

such knowledge, and when and how the individual(s) gained such knowledge.

39: All documents that refer to or relate to the assertion in paragraph 141 of the Amended Complaint that it is Wachovia's policy and procedure to review fictitious names registry and/or request documentation from the customer for the purpose of determining that he is authorized to open a DBA account, including but not limited to documents that reflect such policy or procedure, and or the reason for the adoption, implementation or existence of such policy or procedure.

40: All documents that refer to or relate to the assertion in paragraph 143 of the Amended Complaint that Wachovia knew Nadel was diverting limited partnership funds into his personal account, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who knew Nadel was diverting limited partnership funds into his personal account, the specific transactions that the individual(s) knew were improper, when and how the individual(s) gained such knowledge, and to whom at Wachovia the individual(s) communicated such knowledge.

41: All documents that refer to or relate to the assertion in paragraph 145 of the Amended Complaint that Wachovia knew that a wire transfer was intended for a specific recipient but knowingly assisted Nadel in converting those monies by depositing them into an account that bore no relationship to the intended recipient, including but not limited to documents that refer to or reflect the name of the individual(s) who possessed such knowledge and when and how the individual(s) assisted Nadel as alleged.

42: All documents that refer to or relate to the assertion in paragraph 157 of the Amended Complaint that Wachovia gained knowledge that Viking Fund and Viking IRA were wholly separated entities, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who gained such knowledge, how such knowledge was gained, when such knowledge was gained, and to whom at Wachovia such knowledge was communicated.

43: All documents that refer to or relate to the assertions in paragraph 166 of the Amended Complaint that Wachovia had knowledge that Moody was the principal for Viking Fund, that Nadel was not an officer, director, principal, managing member or partner of that Fund, and that the operational investor deposit account for that Fund was held at Northern Trust Bank, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who gained such knowledge, when and how such person(s) gained such knowledge, and to whom at Wachovia such person(s) communicated such knowledge.

44: All documents that refer to or relate to the assertion in paragraph 177 of the Amended Complaint that Wachovia, Best and other Bank employees "collectively reviewed the Nadel

shadow accounts on more than 200 occasions," including but not limited to documents that reflect the dates on which each shadow account was reviewed, the name of the individual(s) at Wachovia who reviewed the accounts in each instance, and the information obtained during such review of the subject account.

45: All documents that refer to or relate to the assertion in paragraph 180 of the Amended Complaint that Wachovia and Best "chose to ignore repeated clear indications of money laundering activities, including evidence of structured transactions, and unusual concentrations of funds in accounts with no reasonable explanation requested from or provided by the customer, Nadel," including but not limited to documents that show the identity of the individual(s) other than Best who became privy to "repeated clear indications of money laundering activities," the date(s) on which such matters became apparent to Best and such other individual(s), how Wachovia or Best received such information, and the name of the individual(s) at Wachovia who received such information.

46: All documents that refer to or relate to Wachovia's knowledge at any time prior to January 21, 2009 of any of the matters described in paragraph 183 of the Amended Complaint regarding Nadel's background, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who gained such knowledge, when such knowledge was gained, to whom at Wachovia such knowledge was communicated, and any and all communications regarding such facts.

47: All documents that refer to or relate to the assertion in paragraph 184 of the Amended Complaint that Wachovia identified the matters described in paragraph 183 of the Amended Complaint, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who identified such facts, when and how such facts were identified, and any and all communications regarding such facts.

48: All documents that refer to or relate to the assertions in paragraph 185 of the Amended Complaint that Wachovia gained knowledge of judgments entered against Nadel or had knowledge of Nadel's inability to pay far smaller sums than those Wachovia proceeded to lend him, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who gained such knowledge, and when and how such knowledge was gained.

49: All documents that refer to or relate to the assertion in paragraph 189 of the Amended Complaint that Wachovia knew that Scoop Real Estate, L.P.'s performance statements were too good to be true, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge or came to such a conclusion, when and how such person(s) gained that knowledge or came to that conclusion, and any communications regarding such knowledge or conclusion.

50: All documents that refer to or relate to the assertion in paragraph 191 of the Amended Complaint that Wachovia was provided a copy of Viking Fund's private placement memorandum and partnership agreement, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who received such documents and when and from whom the person(s) received such documents.

51: All documents that refer to or relate to the assertions in paragraph 193 of the Amended Complaint.

52: All documents that refer to or relate to the assertion in paragraph 196 of the Amended Complaint that Wachovia knew that Viking Fund's performance statements were too good to be true, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge or came to such a conclusion, when and how such person(s) gained that knowledge or came to that conclusion, and any communications regarding such knowledge or conclusion.

53: All documents that refer to or relate to any "false profits" received by Wachovia in connection with any investment in any of the Hedge Funds.

54: All documents that refer to or relate to the assertions in paragraph 199 of the Amended Complaint, including but not limited to documents that refer to or relate to the December 26, 2007 email referenced therein, and documents that identify the unnamed Wachovia employee referenced therein.

55: All documents that in any manner indicate that at any time before January 21, 2009, Wachovia knew or should have known that: "a) Nadel was not the true principal for Viking Fund, b) Nadel was not authorized to open [demand deposit accounts] on behalf of the [Hedge] Funds [or any of them], c) there were innocent decision-makers associated with Viking Fund to whom [Wachovia] could have reported [] instances of illegal activity; d) the Hedge Funds held operational accounts at Northern Trust Bank, as investors were instructed to wire investment deposits to those accounts; e) the Moodys were the sole principals of Viking fund; and[/or] f) the [Hedge] Funds' performance statements conflicted with all appropriate indices," as alleged in paragraph 200 of the Amended Complaint.

56: All documents that refer to or relate to the assertions in paragraph 201 of the Amended Complaint that Wachovia knew that the Hedge Funds' "performance statements were too good to be true," and/or that Wachovia "initiat[ed] discussions regarding an additional investment in Viking Fund."

57: All documents that refer to or relate to the assertion in paragraph 202 of the Amended Complaint that Wachovia had knowledge of Northern Trust Bank accounts and the Moodys'

roles as principals of the Hedge Funds, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when and how the individual(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

58: All documents that refer to or relate to the assertion in paragraph 204 of the Amended Complaint that Wachovia had "knowledge of the aforementioned indicia of fraud surrounding Nadel," including specifically but without limitation all documents that refer to, reflect or indicate that Wachovia knew or should have known that Nadel's home mortgage payments were made with funds Nadel had obtained through fraud or conversion, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, what knowledge the person(s) had, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

59: All documents that refer to or relate to the assertion in paragraph 205 of the Amended Complaint that payments made on the mortgage loan on the BB&T Property "were made using proceeds from Nadel's fraud and conversion," including specifically but without limitation all documents that refer to, reflect or indicate that Wachovia knew or should have known that BB&T mortgage loan payments were made with funds Nadel had obtained through fraud or conversion, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

60: All documents that refer to or relate to the assertion in paragraph 205 of the Amended Complaint that the proceeds of the mortgage loan on the BB&T Property were used to fund Nadel's Ponzi scheme, including specifically but without limitation all documents that refer to, reflect or indicate that Wachovia knew or should have known that the BB&T mortgage loan proceeds were used or were going to be used to fund Nadel's scheme, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

61: All documents that refer to or relate to the assertion in paragraph 205 of the Amended Complaint that Wachovia had "knowledge of the aforementioned indicia of fraud surrounding [Scoop Real Estate] and Nadel himself," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, what knowledge each such individual had, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

62: All documents that refer to or relate to the assertion in paragraph 206 of the Amended Complaint that the proceeds of the mortgage loan on the Rite Aid Property were used to fund

Nadel's Ponzi scheme, including specifically but without limitation all documents that refer to, reflect or indicate that Wachovia knew or should have known that the Rite Aid mortgage loan proceeds were used or were going to be used to fund Nadel's scheme, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

63: All documents that refer to or relate to the assertion in paragraph 206 of the Amended Complaint that payments made on the mortgage loan on the Rite Aid Property "were made by using proceeds from Nadel's fraud and conversion," including specifically but without limitation all documents that refer to, reflect or indicate that Wachovia knew or should have known that Rite Aid mortgage loan payments were made with funds Nadel had obtained through fraud or conversion, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

64: All documents that refer to or relate to the assertion in paragraph 206 of the Amended Complaint that Wachovia had "knowledge of the aforementioned indicia of fraud surrounding [Scoop Real Estate] and Nadel himself," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, what knowledge the person(s) had, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

65: All documents that refer to or relate to the assertion in paragraph 208 of the Amended Complaint that Laurel Preserve's mortgage payments "were made using proceeds from Nadel's fraud and conversion," including specifically but without limitation all documents that refer to, reflect or indicate that Wachovia knew or should have known that Laurel Preserve mortgage loan payments were made with funds Nadel had obtained through fraud or conversion, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

66: All documents that refer to or relate to the Receiver's assertions in paragraph 209 of the Amended Complaint, including without limitation, all documents that identify the "[f]ormer Wachovia employees [who] have confirmed that the Bank had actual knowledge of Nadel's outstanding judgments at the time it was assessing" any loan applications referenced therein.

67: All documents that refer to or relate to the Receiver's assertions in paragraph 210 of the Amended Complaint, that "[o]n multiple occasions and without any lawful purpose, Wachovia and Best allowed, facilitated and executed the transfer of money from one Hedge Fund's Wachovia account into another unrelated Hedge Fund's Wachovia account,"

including specifically but without limitation all documents that relate to or reflect the identity of the individuals at Wachovia who allowed, facilitated and executed the such transfers, and the purpose those individuals served in engaging in "allow[ing], facilitat[ing] and execut[ing]" the transfers.

68: All documents that refer to, relate to or reflect that anyone at Wachovia, including Best, recognized, noted or knew about any "unusual trends or patterns of Nadel's transfers" among bank accounts as asserted in paragraph 210 of the Amended Complaint.

69: All documents that refer to or relate to the assertion in paragraph 212 of the Amended Complaint that Wachovia "had a working relationship with [Viking] Fund Vice President and principal Chris Moody," and/or that "the Bank and Best had knowledge that Scoop Capital was not an officer, director, principal, managing member or partner of the three Hedge Funds created by the Moodys – Valhalla Investment, Viking Fund, and Viking IRA," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

70: All documents that refer to or relate to the assertion in paragraph 213 of the Amended Complaint that Wachovia and Best knew that Nadel commingled the assets and accounts of the Hedge Funds with the assets of his own securities trading accounts, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, the specific knowledge that the person(s) had, and to whom at Wachovia such knowledge was communicated.

71: All documents that refer to or relate to the assertion in paragraph 214 of the Amended Complaint that Wachovia and Best "had knowledge that on multiple occasions Nadel transferred money from Goldman Sachs trading accounts to Wachovia shadow accounts that did not match," including but not limited to documents that reflect the identity of all individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, the specific transactions that each such person(s) knew about, and to whom at Wachovia such knowledge was communicated.

73: All documents that refer to or relate to the assertion in paragraph 214 of the Amended Complaint that Wachovia "had knowledge from Goldman Sachs regarding which [of the Hedge Funds] was the intended beneficiary and transferee of the wired monies," including but not limited to documents that show who at Goldman Sachs communicated such information to any person(s) at Wachovia, what information was communicated, the name of the individual(s) at Wachovia who received such knowledge, when the person(s) received such knowledge, and to whom at Wachovia such knowledge was communicated.

74: All documents that refer to or relate to the assertion in paragraph 214 of the Amended Complaint that Wachovia "had actual knowledge that each transfer of monies from Goldman Sachs to a non-matching account at Wachovia constituted an act of conversion," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when the person(s) gained such knowledge, the specific transactions that such person(s) knew were improper, and to whom at Wachovia such knowledge was communicated.

75: All documents that refer to or relate to the assertion in paragraph 216 of the Amended Complaint that Wachovia and Best had knowledge that Nadel, on multiple occasions, transferred money out of Guy-Nadel Foundation, Inc.'s account and into the Hedge Funds' accounts, and that Wachovia and Best recognized or noted unusual trends or patterns in transfers between the Guy-Nadel Foundation account and the Hedge Funds' accounts, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge or who recognized or noted such trends or patterns, when the person(s) gained such knowledge or recognized or noted such trends or patterns, the specific transactions that such person(s) knew, recognized or noted were inappropriate or were part of an unusual trend or pattern, and to whom at Wachovia such knowledge or information was communicated.

76: All documents that refer to or relate to the assertion in paragraph 217 of the Amended Complaint that Wachovia and Best had knowledge of Nadel's transfers between individual and business accounts at Wachovia and Northern Trust, and/or recognized or noted unusual trends or patterns in transfers involving those accounts, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge or who recognized or noted such trends or patterns, when the person(s) gained such knowledge or recognized or noted such trends or patterns, the specific transactions that such person(s) knew, recognized or noted were inappropriate or were part of an unusual trend or pattern, and to whom at Wachovia such knowledge or information was communicated.

77: All documents that refer to or relate to the assertion in paragraph 219 of the Amended Complaint that Wachovia and Best had knowledge of and/or recognized or noted any unusual trends or patterns in transfers into, out of, and across various accounts related to Nadel, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, or who recognized or noted such trends or patterns, what trends or patters were known, recognized or noted by each such person(s), and when the person(s) gained such knowledge or recognized or noted such trends or patterns.

93: All documents that refer to, relate to, or substantiate the Receiver's assertions in paragraph 259 of the Amended Complaint, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who engaged in the acts and omissions that the

Receiver contends constitute negligence or recklessness.

97: All documents that refer to, relate to, or substantiate the assertion in paragraph 277 of the Amended Complaint that fees received by Wachovia "served no legitimate business or apparent lawful purpose, but rather were initiated and completed in furtherance of Nadel's Ponzi scheme," including but not limited to documents that show the date and amount of each such fee.

The Receiver responds to all of these requests as follows:

**Response**: The Receiver objects to this request as unduly burdensome, intended to harass, irrelevant and not reasonably calculated to lead to the discovery of such evidence because it inquires as to an assertion in the Amended Complaint, which was dismissed and is no longer operative. [The referenced paragraph] of the governing complaint includes no such assertion. The Receiver further objects to this request to the extent that it seeks documents otherwise believed to be within the possession, custody or control of Defendant and/or its counsel.

The Court should compel production from the Receiver as to each of the foregoing requests because his objections have no merit. *Tallman*, 2012 WL 1108641, at *1-*2 (not a valid objection that allegation removed from pleading); *Gomez*, 2012 WL 3111897, at *4 (not a valid objection that information may be in requesting party's possession). The Receiver made the foregoing allegations in one form or another in his original and amended complaints, and many of those same allegations are incorporated either verbatim or in paraphrased form in his second amended complaint.

8. Request No. 29

All documents that refer to or relate to the assertion in paragraph 11 of the Amended Complaint that Wachovia "has a history of assisting and profiting from the commission of fraud by account holders," including but not limited to the name(s) of the account holders, how such fraud was perpetrated, and when and how Wachovia assisted and profited from such fraud.

Response: The Receiver objects to this request as unduly burdensome, intended to harass, irrelevant and not reasonably calculated to lead to the discovery of such evidence because it inquires as to an assertion in the Amended Complaint, which was dismissed and is no longer operative. Paragraph 11 of the governing complaint includes no such assertion.   The Receiver further objects to this request to the extent that it seeks documents available from other sources, including public records, and otherwise believed to be within the possession, custody or control of Defendant and/or its counsel.

The Court should compel production from the Receiver because his objections have

no merit. *Tallman*, 2012 WL 1108641, at *1-*2 (not a valid objection that allegation

removed from pleading); *Pepperwood of Naples Condo. Ass'n*, 2011 WL 3841557, at *4 (not

a valid objection that information available from another source); *Gomez*, 2012 WL 3111897,

at *4 (not a valid objection that information may be in requesting party's possession).

9.   Request Nos. 79-92

79: All documents that refer to or relate to the assertion in paragraph 225 of the Amended Complaint that Wachovia had knowledge of Nadel's fraud, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, what information was known to such person(s), when the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

80: All documents that refer to or relate to the assertion in paragraph 226 of the Amended Complaint that Wachovia and Best aided and abetted and/or rendered substantial assistance to Nadel in accomplishing any fraud, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who aided and abetted and/or rendered substantial assistance to Nadel in accomplishing any fraud, and when and how the person(s) aided and abetted and/or rendered substantial assistance to Nadel in accomplishing any fraud.

81: All documents that refer to or relate to the assertion in paragraph 226 of the Amended Complaint that Wachovia and Best knowingly violated banking regulations, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who knowingly violated banking regulations, what banking regulation(s) the person(s) violated, and when and how the person(s) violated any banking regulations.

82: All documents that refer to or relate to the assertion in paragraph 226 of the Amended Complaint that Wachovia and Best knew Nadel did not have authority to act on behalf of

Valhalla Investments and Viking Fund, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had such knowledge, when and how the person(s) gained such knowledge, and to whom at Wachovia such knowledge was communicated.

83: All documents that refer to or relate to the assertion in paragraph 226 of the Amended Complaint that Wachovia and Best "willfully ignor[ed] known misrepresentations in account opening documents," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who willfully ignored such misrepresentations, what misrepresentations the person(s) willfully ignored, the conduct, if any engaged in by the person(s) in willful ignorance of the misrepresentations, and when and how the person(s) gained knowledge that indicated or should have indicated that the information provided to Wachovia was a misrepresentation.

84: All documents that refer to or relate to the assertion in paragraph 226 of the Amended Complaint that Wachovia and Best "allow[ed] and facilitate[ed] Nadel's theft from the Hedge Funds," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who engaged in any act or omission in connection with Nadel's theft from the Hedge Funds and when and how the person(s) allowed and facilitated Nadel's theft from the Hedge Funds.

85: All documents that refer to or relate to the assertion in paragraph 237 of the Amended Complaint that Wachovia and Best "had knowledge of Nadel's breach of fiduciary duty," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who gained such knowledge, the particulars of such knowledge, and when and how the person(s) gained such knowledge.

86: All documents that refer to or relate to the assertion in paragraph 237 of the Amended Complaint that Wachovia and Best substantially assisted Nadel's breach of fiduciary duty, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who substantially assisted Nadel's breach of fiduciary duty and when and how the person(s) substantially assisted Nadel's breach of fiduciary duty.

87: All documents that refer to or relate to the assertion in paragraph 238 of the Amended Complaint that Wachovia and Best aided and abetted Nadel in any fraud, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who aided and abetted Nadel to commit "the above-described fraud" and when and how the person(s) aided and abetted Nadel to commit "the above-described fraud."

88: All documents that refer to or relate to the assertion in paragraph 244 of the Amended Complaint that Wachovia and Best had knowledge of Nadel's acts in misappropriating

money from Scoop Real Estate, Victory IRA Fund, and Victory Fund, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who had knowledge of the alleged acts and when and how the person(s) gained knowledge of the alleged acts.

89: All documents that concern or reflect the transactions that constituted Nadel's misappropriation of monies belonging to Scoop Real Estate, L.P., Victory IRA Fund, Ltd. and/or Victory Fund, Ltd., as referenced in paragraph 244 of the Amended Complaint, including but not limited to documents that show the date of such transactions, the parties to such transactions, the substance of the transactions, and the person(s) who initiated or participated in such transactions.

90: All documents that refer to or relate to the assertion in paragraph 245 of the Amended Complaint that Wachovia and Best "aided and abetted and rendered substantial assistance to Nadel in conversion of the monies from the Hedge Funds," including but not limited to documents that reflect the identity of the individual(s) at Wachovia who aided and abetted or rendered substantial assistance to Nadel in conversion of the monies from the Hedge Funds and when and how the person(s) aided and abetted or rendered substantial assistance to Nadel in conversion of the monies from the Hedge Funds.

91: All documents that refer to or relate to the assertion in paragraphs 249 and 252 of the Amended Complaint that Wachovia and Best aided and abetted Nadel's conversion of monies received by Valhalla Investment Partners, Viking IRA Fund and Viking Fund from their respective investors, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who aided and abetted Nadel's conversion of monies received by these Hedge Funds and when and how the person(s) aided and abetted Nadel's conversion of monies received by such Funds.

92: All documents that refer to or relate to the assertion in paragraph 251 of the Amended Complaint that Wachovia and Best had knowledge of Nadel's acts in misappropriating money from Valhalla Investment Partners, Viking IRA Fund and Viking Fund, including but not limited to documents that reflect the identity of the individual(s) at Wachovia who gained such knowledge and when and how the person(s) gained such knowledge.

The Receiver responds to all of these requests as follows:

**Response**: The Receiver objects to this request as unduly burdensome, intended to harass, irrelevant and not reasonably calculated to lead to the discovery of such evidence because it inquires as to an assertion in the Amended Complaint, which was dismissed and is no longer operative, and a cause of action that was dismissed and is no longer at issue. The governing complaint does not include [the referenced paragraph]. The Receiver further

objects to this request to the extent that it seeks documents otherwise believed to be within the possession, custody or control of Defendant and/or its counsel.

The Court should compel production from the Receiver because his objections have no merit. *Tallman*, 2012 WL 1108641, at *1-*2 (not a valid objection that allegation removed from pleading); *Pepperwood of Naples Condo. Ass'n*, 2011 WL 3841557, at *4 (not a valid objection that information available from another source); *Gomez*, 2012 WL 3111897, at *4 (not a valid objection that information may be in requesting party's possession).  The Receiver made the foregoing allegations in one form or another in his original and amended complaints, and they are incorporated either verbatim or in paraphrased form in his second amended complaint.

For the reasons set forth herein, Defendants respectfully request this Court to compel the Receiver to produce documents responsive to Defendants' First Request for Production as set forth herein, and grant such other and further relief as this Court deems just and proper, including an award of the fees, costs and expenses incurred in bringing this motion, to the extent such an award is available under the circumstances.

## LOCAL RULE 3.01(G) CERTIFICATE

The undersigned certifies that she conferred with counsel for the Receiver in a good faith in an effort to reach agreement on a resolution of the matters at issue in this discovery dispute, but the parties were unable to agree.

/s Beth A. Cronin
Marvin Barkin, FBN 3564
Dale W. Cravey, FBN 856428
Charles M. Harris, FBN 967459

24

Beth A. Cronin, FBN 0054933
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
200 Central Ave., Suite 1600
St. Petersburg, FL 33701
Phone 727.896.7171/Fax 727.822.8048
mbarkin@trenam.com; dcravey@trenam.com;
charris@trenam.com; bcronin@trenam.com
Attorneys for defendants
Wells Fargo Bank, N.A. and
Timothy Ryan Best

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, together with a notice of electronic filing of same, has been furnished via the Court's CM/ECF system to Terry A. Smiljanich, Esq. and Sean P. Keefe, Esq., James Hoyer Newcomer & Smiljanich, P.A., One Urban Centre, Suite 550, 4830 W. Kennedy Blvd., Tampa FL 33609 this 11th day of October, 2013.

s/ Beth A. Cronin
Attorney