UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, ESQ., as
Court-Appointed Receiver for
SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT
PARTNERS, L.P., VICTORY IRA
FUND, LTD., VICTORY FUND, LTD.,
VIKING IRA FUND, LLC, and
VIKING FUND, LLC,

    Plaintiff,                                    CASE NO.: 8:12-cv-00557-JDW-EAJ

  v.

WELLS FARGO BANK, N.A., as
successor-in-interest to Wachovia Bank, N.A.
and Timothy Ryan Best,

    Defendants.
_____/

**RECEIVER'S MOTION TO STRIKE THE REPORT OF
DEFENDANTS' DESIGNATED EXPERT, STEVEN OSCHER,
AND TO PRECLUDE HIS TESTIMONY AT TRIAL**

Burton W. Wiand, Esq., as Court-Appointed Receiver (the "**Receiver**" or "**Plaintiff**") for Scoop Real Estate, L.P., Valhalla Investment Partners, L.P., Victory IRA Fund, Ltd., Victory Fund, Ltd., Viking IRA Fund, LLC, and Viking Fund, LLC (collectively, the "**Hedge Funds**" or "**Funds**"), moves the court to (1) strike the reports[1] filed by Defendants Wells Fargo Bank, N.A. as successor by merger with Wachovia Bank, N.A. ("**Wachovia**") and

---

[1] Oscher's initial expert report is dated August 28, 2013 and is attached as **Exhibit A**. His rebuttal report, dated September 18, 2013, is attached as **Exhibit B**. Oscher was deposed on October 31, 2013, and a copy of the transcript ("**OD**") is attached as **Exhibit C**.

1

Timothy Ryan Best ("**Best**")'s designated expert Steven S. Oscher ("**Oscher**") and (2) preclude Oscher from offering expert testimony in this case.

Defendants have submitted two expert reports from Steven S. Oscher, CPA, and economist: one dated August 28, 2013, and a rebuttal report dated September 18, 2013. As shown below, Oscher limited his review of the documents to those specifically provided to him by defense counsel. He reviewed only a portion of the bank statements at Wachovia for Victory Fund, Ltd., and the bank statements for Scoop Real Estate, L.P., and he reviewed the Wachovia deposit account applications for those two Funds. He further reviewed only two monthly brokerage statements supplied to him by defense counsel, one dated December 2007 for Victory IRA Fund, Ltd., and another dated July 2002 for Viking Master Fund, Ltd.. Finally, he reviewed the expert opinion of Plaintiif's expert Maria Yip, together with the exhibits attached to her report.

As further detailed below, Oscher opines on banking practices and a bank's ability to detect potential fraudulent activity, even though he fully acknowledges that he has no regulatory experience in the banking industry, never been asked to render opinions as to banking regulations, and has never reviewed any of Wachovia's policies and procedures concerning anti-money laundering or fraud detection. *See* Exhibit A, pp. 4-5, OD, pp. 16-27. Oscher further provides incorrect speculation as to facts that he believes were known to various Hedge Fund employees, even though the factual record disputes those assumptions, and he readily admits that he never reviewed the depositions of those Hedge Fund employees. *See* Exhibit A, p. 6, OD, at pp. 66-68. Oscher acknowledges that he only reviewed a fraction of the relevant financial statements, that he only examined what Defense

counsel provided him, and that he did not bother to ask for any additional account information beyond that which was provided to him. (OD at pp. 32-35, 40-41, 44-47, 49, 59-64, 71-72, and 78). Oscher additionally "questions" the conclusions offered by Plaintiff's expert Maria Yip, but fails to disclose the bases or reasons for these "questions" and does not provide any methodology utilized in "questioning" Yip's conclusions. *See* Exhibit B, pp. 5-6.

In sum, Oscher's opinions should be stricken and his trial testimony precluded because: 1) he is not qualified to opine on banking practices and procedures for fraud detection; 2) his opinions concerning supposed factual knowledge of Hedge Fund employees are not expert opinions and are nothing more than conjecture; 3) he did not examine the vast majority of the relevant documents which are critical for rendering a reliable opinion that would be helpful to the trier of fact; and 4) his rebuttal opinions do not comply with the Federal Rules of Civil Procedure.

I.   **LEGAL STANDARD**

Trial courts are the gatekeepers to the admission of all expert testimony and must ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 589 (1993); *see also U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005) ("The 'gatekeeping' function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702.") (citing *McCorvey v. Baxter Healthcare Corp*., 298 F.3d 1253, 1257 (11th Cir. 2001)).

The focus of *Daubert* is the reliability of the expert's methodology. In *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), the Court extended the requirement of reliability to the conclusions the expert draws from the application of the methodology:

> . . . conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

In order to determine the admissibility of expert testimony, a district court must consider whether: (1) the expert is qualified to testify competently as to the subject matter he intends to address; (2) the method employed by the expert is sufficiently reliable; and (3) the testimony assists the trier of fact to comprehend the evidence through the application of the witness's expertise. *Quiet Tech. DC-8, Inc. v. Hurel- Dubois U.K. Ltd.*, 326 F. 3d 1333, 1340-41 (11th Cir. 2003). "While there is inevitably some overlap among the basic requirements-qualification, reliability, and helpfulness-they remain distinct concepts and the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260-61.

Indeed, Rule 702 of the Federal Rules of Evidence makes clear that expert status may be based on "knowledge, skill, experience, training or education."

A qualified expert, however, must still offer reliable testimony. *See Quiet Tech.*, 326 F.3d at 1341-42. "When evaluating the reliability of scientific expert opinion, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.'" *Frazier*, 387 F.3d at 1261-62 (quoting *Daubert*, 509 U.S. at 592-93). In assessing the reliability of scientific opinion or non-scientific, experience-based testimony, a court must consider: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id*. at 1262. "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id*. at 1261 (quoting Fed. R. Evid. 702 advisory committee note (2000)) (internal quotations omitted)).

A court must also determine whether the expert testimony will assist the jury. Expert testimony is admissible under this requirement "if it concerns matters that are beyond the understanding of the average lay person." *Id*. at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id*. at 1262-63.

Finally, a court may exclude expert testimony if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. *Id*. at 1263 *see*; Fed. R. Evid. 403. Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a court "must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id*.

II. **OSCHER'S OPINIONS SHOULD BE STRICKEN AND HIS TESTIMONY PRECLUDED BECAUSE THEY DO NOT SURVIVE *DAUBERT* SCRUTINY AND THEY DO NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE**

Following his limited review of various documents, Oscher came to the following opinions:

A. Based on account activities in Victory Fund, Ltd. between June 1, 2005 and April 30, 2009, Mr. Oscher sees "no indication that Defendants had or should have had actual knowledge of or any reason to suspect Mr. Nadel's fraudulent activities." *See* Exhibit A, p. 5.

B. Based on account activities in Scoop Real Estate, L.P. between September 5, 2007 and April 30, 2009, Mr. Oscher sees "no indication that Defendants had or should have had actual knowledge of or any reason to suspect Mr. Nadel's fraudulent activities." *Id*.

C. Mr. Oscher concludes from his review of two brokerage statements that any monthly statement reconciliations performed by "the Funds" would have revealed the fact that bank accounts were maintained at Wachovia. *Id*. at 6.

    D. Regarding his review of the report by Maria Yip, he simply asks a question: "Specifically, what is the economic basis to conclude that $33,257,313 in Management Fees should be attributable to Wells Fargo?" *See* Exhibit B, at p. 5.

    E. He similarly asks the following question: "Specifically, what is the economic basis to conclude that $19,258,543 in False Profits should be attributable to Wells Fargo?" *Id.*

    F. After noting that the Yip report sets forth $1,099,649 in interest income received by the Bank in Nadel real estate loans, Mr. Oscher states: "From an economic perspective, I am unaware of how Wachovia was unjustly enriched for receiving interest on funds loaned by Wachovia." *Id.* at pp. 5-6.

Oscher's opinions should be stricken and his trial testimony precluded because: 1) he is not qualified to opine on Wachovia's practices and procedures for detecting fraud or money laundering; 2) his opinions concerning supposed factual knowledge of Hedge Fund employees are not expert opinions and are mere speculation; 3) he did not examine the vast majority of the relevant documents which are critical for rendering a reliable opinion that would be helpful to the trier of fact; and 4) his rebuttal opinions do not comply with the Federal Rules of Civil Procedure.

    **A.  Oscher Is Not Qualified To Provide An Opinion Regarding Wachovia's Policies and Procedures For Money Laundering And Fraud Detection.**

In his deposition, Mr. Oscher acknowledges that he is not an expert regarding banking rules and regulations, (OD, at p.18, line 24 – p. 19, line 9), and has never provided an expert opinion with regard to a bank's responsibilities in connection with Ponzi schemes (OD, at p.19, line 23 – p. 20, line 3). He admitted no knowledge or proficiency with the

legislation, rules, regulations and Wachovia's internal banking manuals that the pleadings and Ms. Ghiglieri referenced (OD, at pp. 21-27). He did not even review the expert report of the banking expert Catherine Ghiglieri, and has no knowledge of her opinions as to what a bank should or shouldn't know regarding customer account activity. (OD, at p.68, line 22 – p.69, line 18). Mr. Oscher testified that he was testifying strictly from an accounting perspective (OD, at p.70, lines 14-21), based on a limited review of only two hedge fund accounts. (OD, at p.41, line 10 and p.73, line 4).

In essence, Mr. Oscher's opinions in this regard are those of an accounting expert looking at a very limited amount of the available evidence, and thereby concluding what a <u>banking institution</u> should or shouldn't know. Given his admitted lack of knowledge in this specific field, i.e., what a bank should or shouldn't know, his opinion as to what Wachovia (or any bank) should or shouldn't have known does not meet the *Daubert* standard of admissibility.

This is compounded by the fact that Mr. Oscher renders his opinion based on a very blinkered view of the evidence. Even though he purports to opine on what Wachovia should or shouldn't have known, he failed to consider everything that Wachovia actually had knowledge of or had available to it. This is through no fault of his own, since he could only examine what he was asked by Defendants to look at. (OD at pp. 32-35, 40-41, 44-47, 49, 59-64, 71-72, and 78).

Thus, Oscher's opinions in this regard should be stricken based on his admitted lack of qualifications regarding banking practices, and the fact that he failed to examine sufficient facts to render reliable conclusions.

B.  **Oscher's Opinion That Hedge Fund Employees Must Have Known Of The Existence Of The Wachovia Accounts Is A Factual Opinion, Not An Expert Opinion And Is Based On Incorrect Assumptions.**

Plaintiff has alleged that only Arthur Nadel, the perpetrator of the decade-long Ponzi scheme that stole money from the hedge funds and its investors, knew of the existence of the secret Wachovia accounts, which accounts "shadowed" the actual legitimate hedge fund banking accounts at other institutions. Oscher attempts to counter this factual allegation by examining two brokerage statements and concluding that Wachovia (or its predecessor SouthTrust Bank) are mentioned in such statements. Aside from the fact that these two brokerage statements (out of hundreds available) are not even concerning the hedge fund Plaintiffs suing in negligence (Scoop Real Estate and Victory Fund), his opinion does not qualify as an expert opinion.  Whether information contained on account statements would inform an employee of certain facts is not outside a layperson's general experience and common sense.  Rather, it is for the trier of fact to decide what the facts show or do not show; it is not the appropriate task of an expert to give his or her opinion on what the facts show or reveal.  *See U.S. v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir.2004) ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average layperson.") (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985)). *See also U.S. v. Fred Smith*, 122 F.3d 1355, 1358-59 (11th Cir.1997) ("[e]xpert testimony that does not assist the trier of fact can be excluded.") (citing *Hibiscus Assoc. Ltd. v. Board of Trustees of Policemen & Firemen Retirement Sys. of Detroit*, 50 F.3d 908, 917 (11th Cir.1995)).

Additionally, his factual opinion is based on mere conjecture.  In opining on what monthly reconciliations for the Hedge Funds "would have revealed" concerning the existence

9

of secret Wachovia bank accounts, Oscher admits that he was not provided the depositions or statements of the management employees at issue (OD at p.67, line 16 – p. 68, line 20), has no idea how these monthly brokerage statements were actually handled by the business office of the hedge funds (*Id.*), and does not actually know whether anyone other than Arthur Nadel had access to any of the brokerage statements for any of the hedge funds (OD. at p.68, line 15-20), including any actual employee of the hedge funds themselves.. An examination of the available record would have revealed that these brokerage statements were only handled by Mr. Nadel and no one else, contrary to any assumptions Mr. Oscher might have.

### C. Oscher's Opinion Is Unreliable And Would Mislead The Jury Because His Analysis Of The Relevant Financial Documents Is Wholly Incomplete.

Mr. Oscher, pursuant to the instructions he was given by Defendants in this matter, examined only a very small percentage of the available evidence in coming to his opinions as to what Wachovia should or should not have known. In the furtherance of his Ponzi scheme, Nadel utilized a total of 38 bank accounts and 34 brokerage and trading accounts. *See* Declaration of Terry A. Smiljanich, which is being filed along with this motion. At Wachovia Bank alone, he utilized more than a dozen separate bank accounts, from which scores of transfers of tens of millions of dollars were used by him to launder the hedge fund monies and hide the true nature of his criminal activities. *Id.* When he has been asked in the past to examine the mechanics of an alleged Ponzi scheme from an accounting standpoint, Oscher has asked for—and received—as complete a documentation as possible of the total financial and banking activities of the perpetrator in order to render any meaningful opinion about such Ponzi schemes. (*See* OD at p. 50, line 6 – p 51, line 5; p. 57, lines 9-16; p. 72, lines 8 - 22).

By contrast, in this case, Oscher examined only two Wachovia accounts, one of which accounts he did not even have a complete record. (OD at p. 40, line 17 – p. 41, line 11). He did not even have access to accounts from which or to which transfers were made in these two limited accounts, some of which were other Wachovia accounts. (OD at p. 44, line 22 – p. 45, line 15; p. 46, lines 19 - 22 ). Mr. Oscher was aware that Nadel had other Wachovia accounts (OD at p. 48, line 20 – p. 49, line 6), and openly stated that he was unaware of what knowledge Wachovia might have gleaned from the existence of these other accounts. (OD at p. 49, lines 19 -- 23).

An opinion based on such a limited review of documents cannot meet the reliability and trustworthy standards the Court should insist on before allowing a trier of fact to give consideration to it.

### D. Oscher's Rebuttal Opinion Regarding Expert Maria Yip's Conclusions Should Be Stricken Because It Does Not Comply With The Federal Rules of Civil Procedure.

In his rebuttal report dated September 18, 2013, Mr. Oscher addresses the expert report of Receiver's damages expert Maria Yip. He asks two questions: (1) "Specifically, what is the economic basis to conclude that $33,257,313 in Management Fees should be attributable to Wells Fargo?"; and (2) "Specifically, what is the economic basis to conclude that $19,258,543 in False Profits should be attributable to Wells Fargo?" Mr. Oscher then professes "unawareness" regarding another aspect of her report: "From an economic perspective, I am unaware of how Wachovia was unjustly enriched for receiving interest on funds loaned by Wachovia." *See* Exhibit B, pp. 5-6.

At his deposition, Mr. Oscher stated unequivocally that he did not reach any other expert conclusions other than that contained in his two written reports. (OD at p. 29, lines 11 - 23). He also agreed that his two written reports contained his entire expert opinion in fulfillment of his assignment (*Id*.). Consequently, any intended compliance with the requirements of the federal rules regarding expert disclosures are set forth within the four corners of his two written reports.

The Federal Rules of Civil Procedure require experts to disclose: (1) the reasons and basis for all of their opinions; and (2) the facts or data the expert considered in forming the opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Thus, "[it] is not sufficient that an expert report merely set forth the opinions the expert will offer; it must also describe the reasons and basis for those opinions." *Cohlmia v. Ardent health Servs., LLC*, 254 F.R.D. 426, 430 (N.D. Okla. 2008). This includes explaining "how" and "why" the expert reached a result, and not just disclosing a conclusory opinion. *Id.*; *see Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996). An expert's failure to explain the basis for an important inference or step or analysis requires exclusion of that expert's opinion. *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003).

The obligations of Defendants pursuant to the federal rule are not met by presenting an expert report that poses mere questions. Mr. Oscher may wonder what the basis is for a conclusion in an opposing expert's report, but that question cannot constitute an expert opinion proffered as admissible evidence. The questions at issue neither offer any actual opinion, nor describe the reasons and basis for any opinion. One does not offer admissible expert opinions by simply asking another expert a series of questions. *See Cook ex rel.*

*Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005) ("Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough [to carry the proponent's burden].").

As to Oscher's stated inability to understand how receipt of interest on real estate loans can constitute unjust enrichment, his lack of understanding is likewise not admissible expert testimony. In its Order denying Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. 77), the Court allowed the unjust enrichment claims to proceed. The Court also noted that there were "sufficient allegations that payments on the mortgage loans were employed to defraud creditors of Nadel during the Ponzi scheme and that the mortgages were taken out in a continued attempt to inject capital into the Ponzi scheme to defraud creditors." Mr. Oscher presents no <u>expert</u> opinion to the contrary, setting forth the basis for any disagreement he may have with that proposition. Accordingly, because Oscher's rebuttal report does not comply with Federal Rule of Civil Procedure 26(a)(2)(B), it should be stricken and his testimony should be precluded.

### III. CONCLUSION

For the above reasons, the Receiver respectfully requests that the Court grant the Receiver's motion to (1) strike the reports filed by Defendants' designated expert Steven S. Oscher and (2) preclude Oscher from offering expert testimony in this case.

Dated: November 8, 2013

JAMES, HOYER, NEWCOMER &
SMILJANICH, P.A.

*/s/ Terry A. Smiljanich*
Terry A. Smiljanich (FBN 145349)
Christopher C. Casper (FBN 048320)
Sean P. Keefe (FBN 413828)
One Urban Centre, Suite 550
4830 W. Kennedy Blvd.
Tampa, FL 33609
Telephone: (813) 397-2300
Facsimile: (813) 397-2310
E-Mail: tsmiljanich@jameshoyer.com

*Counsel for Plaintiff, Burton W. Wiand*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 8, 2013, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF system, which will provide electronic notice to all counsel of record in this action.

*/s/ Terry A. Smiljanich*
*Attorney for the Receiver, Burton W. Wiand*