## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BURTON W. WIAND, ESQ., as**
**Court-Appointed Receiver for**
**SCOOP REAL ESTATE, L.P., et al.,**

      **Plaintiff,**

**vs.**                                                    **Case No.: 8:12-CV-557-T-27EAJ**

**WELLS FARGO BANK, N.A., et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the Court are Defendants' **Motion to Strike Plaintiff's Jury Trial Demand** (Dkt.

175) and Plaintiff's **Memorandum in Opposition to Defendant's Motion to Strike Plaintiff's**

**Jury Trial Demand** (Dkt. 192).[1] For the reasons that follow, the Court recommends granting in part

and denying in part Defendants' Motion to Strike Plaintiff's Jury Trial Demand. (Dkt. 175)

## Background

Plaintiff Burton W. Wiand ("Receiver") is the court-appointed Receiver for six

hedge funds that lost millions of dollars during a decade-long Ponzi scheme orchestrated by Arthur

Nadel ("Nadel").[2]  Receiver brings claims for negligence, fraudulent transfer, and unjust enrichment

---

[1] This matter has been referred to the undersigned for consideration and issuance of a
Report and Recommendation. See 28 U.S.C. § 636(b)(1)(B); Local Rules 6.01(b) and 6.01(c),
M.D. Fla.

[2] Scoop Real Estate, L.P. ("Scoop Real Estate") and Victory Fund, LTD. ("Victory
Fund") are referred to as the "Customer Hedge Funds," while Valhalla Investment Partners, L.P,
Victory IRA Fund, LTD., Viking IRA Fund, LLC, and Viking Fund, LLC ("Viking Fund") are

1

against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant").[3]   Wells Fargo is successor-in-interest to Wachovia, where Nadel maintained accounts to facilitate the Ponzi scheme.[4]

Here, Defendant moves to strike Receiver's jury trial demand as to Plaintiff's second amended complaint.   In support of this motion, Defendant has provided numerous documents signed by Nadel on behalf of the hedge funds and himself.   The documents can be separated into two categories: banking accounts[5] and real estate transactions.[6]   Defendant has also provided two

---

referred to as the "Noncustomer Hedge Funds."   Nadel opened accounts at Wachovia Bank ("Wachovia") for the Customer Hedge Funds in his capacity as president of the general partner of the hedge funds.   Nadel fraudulently opened accounts for Noncustomer Hedge Funds Valhalla Investment Partners, L.P. and Viking Fund at Wachovia. (Dkt. 37 at 5)   Accordingly, those entities with accounts fraudulently opened by Nadel are not customers of Wachovia. (Id.)   No accounts were opened in the name of Victory IRA Fund, Ltd. or Viking IRA Fund, LLC. (Id.)

[3] Receiver also brought claims against Timothy Ryan Best, a vice president of Wachovia's Wealth Management Private Banking Group. (Dkt. 63 at 3)   Receiver's remaining claim of negligence against Mr. Best was dismissed on January 8, 2014, three days after Defendants filed this motion, and Mr. Best is no longer a party to this case. (Dkt. 183)

[4] Wells Fargo merged with Wachovia on December 31, 2008. Wachovia merged with SouthTrust Bank in 2004. "It is undisputed that Wells Fargo is now responsible for any liability that Wachovia or SouthTrust may have incurred." Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1242 n.1 (M.D. Fla. 2013).

[5] For banking accounts, Defendant has included  a number of signature cards signed by Nadel for himself and the various hedge funds.   However, as it has been established that Nadel fraudulently opened accounts for some of the Noncustomer Hedge Funds, those signature cards are irrelevant.   The only relevant documents Defendant has included are signature cards signed by Nadel for Victory Fund, Ltd. on December 27, 2002 (Dkt. 175, Ex. 1 at 16) and Scoop Real Estate on September 25, 2007 (Id. at 18).   The agreement for Victory Fund was signed on a SouthTrust Bank form. The Scoop Real Estate signature card was on a Wachovia form. Along with these signature cards, Defendant has included deposit agreements bearing the Wachovia name with effective dates of October 28, 2004 and January 1, 2010. (Id. at 3, 11)

[6] For real estate transactions, Defendant has provided two promissory notes executed by Nadel on behalf of Scoop Real Estate: BB&T promissory note signed January 4, 2005 (Dkt. 175, Ex. 3 at 3-8) and Rite Aid promissory note signed May 23, 2005 (Id. at 14-19).   Defendant has also provided mortgage documents for the BB&T property signed January 4, 2005 (Dkt. 175, Ex. 4 at 3-26) and Rite Aid property signed on May 24, 2005 (Id. at 29-52).   Also, Defendant has

declarations from Melissa Martin, an employee of Wells Fargo who has worked with Wells Fargo or its predecessor banks since 1996, discussing the agreements and signature cards.[7] (Dkt. 176, 209)

## Discussion

### A. Jury Trial Waivers

The right to a jury trial in suits at common law is protected by the Seventh Amendment. U.S. Const. amend VII. Jury trial waiver is governed by federal law. Simler v. Conner, 372 U.S. 221, 222 (1963); Ford v. Citizens and Southern Nat. Bank, Cartersville, 928 F.2d 1118, 1121 (11th Cir. 1991). Although it is a fundamental right, a jury trial can be waived by parties to a contract, and such a waiver will be enforced by courts if certain conditions are met. See Allyn v. Western United Life Assur. Co., 347 F. Supp. 2d 1246, 1251 (M.D. Fla. 2004). The Eleventh Circuit has established a four-part analysis to determine whether a jury trial waiver is valid and enforceable. A court is to consider "the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable." Bakrac, Inc. v. Villager Franchise Systems, Inc., 164 F. App'x 820, 823-24 (2006) (unpublished).[8] Some courts also consider whether a party was represented by counsel. See Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1294 (M.D. Fla. 2010). The court is to weigh each factor and determine whether such a waiver would "be unconscionable, contrary to

---

attached bank documents for another of Nadel's companies, Laurel Preserve, LLC. (Dkt. 175, Ex. 3 at 29-36; Dkt 175 Ex. 5) However, the documents related to Laurel Preserve, LLC are not relevant to this case as they do not relate to the party hedge funds.

[7] Receiver opposed Ms. Martin's supplemental declaration (Dkt. 210), but Receiver's motion to strike Ms. Martin's supplemental declaration was denied on April 4, 2014 (Dkt. 219).

[8] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

public policy, or simply unfair." Lapenna v. Suntrust Bank, No. 3-09-CV-1213-J-25TEM, 2010 WL 3368448, at *2 (M.D. Fla. Aug. 24, 2010).

Apparently, the Eleventh Circuit has not decided which party has the burden to prove a valid jury trial waiver and there is a circuit split regarding the issue. See Bakrac, Inc., 164 Fed. App'x at 823, n.1; see also Wells Fargo Bank, N.A. v. Osprey Commerce Center, LLC, No. 8:13-CV-1738-T-27MAP, 2014 WL 1271460, at *2 n.3 (M.D. Fla. Mar. 26, 2014) ("The Eleventh Circuit has observed that there is a split in authority as to which party bears the burden on a motion to strike a demand for a jury trial, but has not yet resolved this question").  Here, the Court finds it appropriate to place the burden on Defendant to demonstrate that Plaintiff's jury trial waiver was knowing and voluntary. See Baker v. Wyndham Worldwide, No. 6:11-CV-1469-ORL-36GJK, 2012 WL 3860049, at *5 (M.D. Fla. Aug. 17, 2012) report and recommendation adopted, No. 6:11-CV-1469-ORL-36GJK, 2012 WL 3854530 (M.D. Fla. Sept. 5, 2012) (placing burden on moving party appropriate as the exacting scrutiny standard requires "construing all reasonable presumptions against a waiver" and party seeking to uphold waiver "should have sufficient knowledge and information to address each of the factors").

**1.** Commercial Deposit Account Agreements

The documents submitted by Defendant do not support their claim to a waiver of the right to a jury trial for the Commercial Deposit Accounts.  Specifically, the account signature card for Victory Fund was signed on December 27, 2002 on a SouthTrust form that contains no mention of a jury waiver. While the form references SouthTrust Bank's Rules and Regulations Governing Deposit Accounts, the documents submitted by Defendant to demonstrate that Nadel waived the right to a jury trial are from Wachovia, not SouthTrust, and are dated 2004.  Because the evidence

does not show whether Nadel waived the right to a jury trial when he signed the signature card for Victory Fund, and the jury trial waiver was in a document separate from the signed document, the Defendants' motion should be denied as to the Victory Fund account. See Lapenna, 2010 WL 3368448, at *2 ("It is unknown how conspicuously the jury trial waiver clause is set forth in the Rules and Regulations for Deposit Accounts at SunTrust Bank when SunTrust assumed control over the frozen joint account in question.  Those Rules and Regulations have not been provided for the Court's review.")

The Wachovia signature card signed by Nadel for Scoop Real Estate is supported by contemporaneous documentation that includes a jury trial waiver. (Dkt. 175, Ex. 1 at 3-6, 18) According to Ms. Martin's declaration, the Commercial Deposit Agreement dated October 28, 2004 was the agreement in effect when Nadel signed the card on September 25, 2007. (Dkt. 209 ¶ 8) However, a review of the agreement does not support a finding that the waiver should be enforced.

First, the jury waiver provision is not conspicuous as the signature card signed by Nadel incorporates by reference that the signer has received the Deposit Account Agreement that has the jury waiver provision. Additionally, the Commercial Deposit Agreement includes 78 provisions in small print condensed into 12 pages,[9] and the jury waiver provision appears on page 11, among 11 other provisions although the heading is in bold lettering and it ends with the language: "YOU UNDERSTAND AND KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY CLASS ACTION LAWSUIT." (Dkt. 175, Ex. 1 at 6)

---

[9] The document is 14 pages long, but page 1 is the cover page and page 2 is the table of contents.

Although the parties' bargaining power seems to be equal as Nadel did not have to engage in business with Wachovia when he signed the document and nothing in the record suggests Nadel and Wachovia were not sophisticated parties, the waiver provision as a whole does not satisfy negotiability standards applied by other courts. It is buried in the middle of a document filled with boilerplate language and does not appear to be negotiable. Weighing these four factors with whether the provisions are unconscionable, against public policy, or simply unfair, the Court finds that Nadel did not knowingly and voluntarily agree to this provision waiving the right to a jury trial for the Scoop Real Estate account. Compare Allyn, 347 F. Supp. 2d at 1253 ("[T]he waiver provisions at issue were not buried in the text of the documents which the Plaintiffs executed.") with Belin v. Litton Loan Servicing, LP, No. 8:06-CV-760-T-24EAJ, 2006 WL 2061340, at *1 n.1 (M.D. Fla. July 17, 2006) (finding a waiver conspicuous when it immediately preceded the signature page of a 12-page agreement).

Accordingly, the Court recommends that the asserted jury trial waivers related to the deposit accounts for Victory Fund and Scoop Real Estate be found unenforceable.

**2.** Real Estate Transactions

Defendant has provided real estate documents with jury waiver provisions signed by Nadel on behalf of Scoop Real Estate. These documents support a finding that Nadel, on behalf of Scoop Real Estate, waived Scoop Real Estate's right to a jury trial as to these two real estate transactions only.

Here, the jury waivers are conspicuous as each provision immediately precedes the signature portion of the document. Additionally, the terms are in capital letters, alerting the signing party to the importance of the provision. The documents are of reasonable length, and the terms are not

buried in small print on small pages, as with the bank deposit agreements. Other courts have found similar provisions to be valid waivers. <u>Wells Fargo Bank, N.A.</u>, 2014 WL 1271460, at *2-3; <u>Ferraro v. Wells Fargo N.A.</u>, No. 2:13-CV-632-FTM-38DNF, 2013 WL 5357109, at *1 (M.D. Fla. Sept. 24, 2013); <u>Gordon v. Chase Home Fin., LLC</u>, No. 8:11-CV-2001-T-33EAJ, 2013 WL 256743, at *9 (M.D. Fla. Jan. 23, 2013); <u>Correa v. BAC Home Loans Servicing LP</u>, No. 6:11-CV-1197-ORL-22DAB, 2012 WL 1176701, at *15 (M.D. Fla. Apr. 9, 2012).

As stated previously, the relative bargaining power appears to be equal between Nadel and Wachovia. Nothing indicates that Nadel was forced to do business with the banks, and he seemingly was free to do business with any other bank of his choosing. Nadel and Wachovia were presumably sophisticated parties as they were entering into multi-million dollar transactions.

While stating that the right to jury trial was "knowingly, voluntarily, and intentionally" waived, the waiver of jury trial provision in each promissory note also states that "[t]his provision is a material inducement to bank to accept [the notes]." (Dkt. 175, Ex. 3 at 7-8, 11, 19, 22-23, 26, 36)

As the case law indicates, there is no one controlling factor in analyzing whether a jury trial waiver is knowing and intentional. Instead, a court is to consider all the circumstances and determine whether the waiver is "unconscionable, contrary to public policy, or simply unfair." <u>Lapenna</u>, 2010 WL 3368448, at *2. Although it is not apparent that the terms were freely negotiable, the other factors weigh in favor of a finding that the jury trial waiver in the real estate documents was knowing and intentional. Similar provisions have been enforced by other courts. <u>See</u> <u>Collins</u>, 680 F. Supp. 2d at 1296; <u>Allyn</u>, 347 F. Supp. 2d at 1252.

Accordingly, the jury trial waivers are enforceable only as they pertain to any claims related

to these two Scoop Real Estate transactions.

## B. Alter Ego Issue

Defendant argues that, as the alter ego of Nadel, each hedge fund is "bound by each other's conduct, including conduct that waives the right to a jury trial by operation of law or by contract." (Dkt. 175 at 11)  Accordingly, Defendant alleges that Receiver's fraudulent transfer claims for all hedge funds are subject to the jury waiver provisions signed by Nadel. (Id. at 11)  In support of this argument, Defendant includes various documents in which Receiver has referred to the hedge funds as Nadel's alter ego, stating that the accounts were not separate funds. (Dkt. 175 Ex. 7)

Receiver responds that Defendant's argument would result in "the Noncustomer Hedge Funds being prohibited from suing the bank for negligence based on a lack of privity while simultaneously finding sufficient privity via alter ego to waive a fundamental constitutional right." (Dkt 192 at 5-6)  Receiver contends that "the corporation was 'cleansed' by the appointment of a receiver and was no longer the perpetrator's 'evil zombie.'" Wiand v. Waxenberg, 611 F. Supp. 2d 1299, 1312 (M.D. Fla. 2009) (citing Scholes v. Lehmann, 56 F.3d 750, 754 (7th Cir. 1995)). Receiver, acting on behalf of the corporations, can pursue the claims despite any wrongdoing that might have precluded the hedge funds from recovery. (Dkt. 192 at 7)

Defendant's argument that the hedge funds were Nadel's alter ego is unpersuasive.  As it has been determined that Nadel fraudulently opened accounts in the name of the Noncustomer Hedge Funds, the jury waiver provisions do not apply to those funds.  Accordingly, the Noncustomer Hedge Funds are not subject to any jury waiver provisions even though Nadel did limit the right to a jury trial only as it relates to Scoop Real Estate's real estate transactions with Wachovia.

## C. Unjust Enrichment Claim

Defendant asserts that, apart from any jury waivers, an unjust enrichment claim is an equitable claim to which there is no right to a jury trial.  Receiver responds that the unjust enrichment claim seeks money damages, which is a legal remedy, and should be determined by a jury.

Some claims of unjust enrichment brought by Receiver have been determined to be equitable in nature. In re Wiand, No. 8:05-CV-1856-T-27MSS, 2007 WL 963165, at *6 (M.D. Fla. Mar. 27, 2007) ("The Court concludes that it is premature to address the legal merits of the Receiver's unjust enrichment claims on motions to dismiss . . . [as] this Court is reluctant to dismiss a claim that is equitable in nature at this stage of the proceedings.").  However, "[w]hen legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both." Lincoln v. Bd. of Regents of Univ. Sys. of Georgia, 697 F.2d 928, 934 (11th Cir. 1983) (citing Curtis v. Loether, 415 U.S. 189, 196 n.11 (1974)).

Based on the current record, the claim of unjust enrichment cannot be characterized as merely equitable, and the request to strike the jury trial demand for the claim of unjust enrichment should be rejected.

## Conclusion

The Court recommends that the only enforceable jury waiver provisions relate to the two Scoop Real Estate transactions, not any commercial deposit accounts.  The jury waiver provisions are not applicable to any of the Noncustomer Hedge Funds.[10]  Further, Federal Rule of Civil

---

[10] Although the complaint was amended again after the jury trial waiver motion was filed, it does not appear that any jury trial waiver would apply to the new claim of negligence as to Viking Fund, a Noncustomer Hedge Fund.

9

Procedure 39(c) permits an advisory jury to act as a fact-finder.[11]  Because the jury waivers are not applicable to all of the claims, the Court recommends use of a jury on matters subject to the jury waivers in an advisory capacity.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)      Defendant's Motion to Strike Plaintiff's Jury Trial Demand (Dkt. 175) be

**GRANTED in part** and **DENIED in part**, as set forth above.


ELIZABETH A JENKINS
United States Magistrate Judge


DATE: April 25, 2014


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

---

[11] Rule 39(c), Fed. R. Civ. P.  provides: "In an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury . . . ."  When an advisory jury is empaneled under Rule 39(c) "[i]ts finding of facts are not binding on the trial court." Wilson v. City of Aliceville, 779 F.2d 631, 635-36 (11th Cir. 1986).

Copies to:

Counsel of Record

District Judge