UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND,
as Court-Appointed Receiver for
SCOOP REAL ESTATE L.P. et al.,

    Plaintiff,

vs.                                                     Case No. 8:12-cv-00557-T-27EAJ

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Magistrate Judge's Report and Recommendation (Dkt. 220) recommending that Defendants' Motion to Strike Plaintiff's Jury Trial Demand (Dkt. 175) be granted in part and denied in part. Defendant objects (Dkt. 223), to which the Receiver responded in opposition (Dkt. 226). Upon consideration, the Report and Recommendation (Dkt. 220) is APPROVED and ADOPTED in full. Defendant's Motion to Strike Plaintiff's Jury Trial Demand (Dkt. 175) is GRANTED in part and DENIED in part.

I.    INTRODUCTION

Plaintiff is the court-appointed Receiver for hedge funds utilized by Arthur Nadel to perpetrate a Ponzi scheme. Nadel maintained bank accounts used to facilitate the scheme at Wachovia Bank, which was acquired by Defendant Wells Fargo Bank. Relying on language from signature cards signed by Nadel and account agreements governing those accounts, as well as certain loan documents, Defendant moves to strike the Receiver's jury trial demand (Dkt. 175). The motion

1

was referred to the Magistrate Judge.

The Magistrate Judge recommends that Defendant's motion be granted in part and denied in part (Dkt. 220). The Magistrate Judge determined that the only documents relevant to the jury trial waiver issue are:

> (1) a SouthTrust Bank account signature card signed by Nadel for the hedge fund Victory Fund, Ltd. ("Victory Fund") on December 27, 2002 (Dkt. 175-1 at 16);
>
> (2) a Wachovia account signature card signed by Nadel for the hedge fund Scoop Real Estate, L.P. ("Scoop Real Estate") on September 25, 2007 (Dkt. 175-1 at 18);
>
> (3) a promissory note and corresponding mortgage documents signed by Nadel on behalf of Scoop Real Estate on January 4, 2005 (Dkt. 175-3 at 3-8; Dkt. 175-3 at 3-26); and
>
> (4) a second promissory note and corresponding mortgage documents signed by Nadel on behalf of Scoop Real Estate on May 23, 2005 (Dkt. 175-3 at 14-19; Dkt. 175-4 at 29-52).

See Dkt. 220 at 2 n.5, 2 n.6. Defendant does not challenge this finding.

Looking first to the account signature cards signed by Nadel, (1) and (2) above, the Magistrate Judge determined that the 2002 SouthTrustVictory Fund card "contains no mention of a jury waiver," and notes that the purported jury trial waiver relied on by Defendant is contained in a separate document, unrelated to the Victory Fund card, specifically, a 2004 Wachovia document. See Dkt. 220 at 4-5. As for the Scoop Real Estate card, the Magistrate Judge found that the purported jury trial waiver was not sufficiently conspicuous because the card incorporated by reference another document containing a jury waive, and the jury waiver was buried in small print on the second-to-last page of a boilerplate document. Accordingly, the Magistrate Judge determined that Defendant had not sustained its burden of demonstrating a waiver of the Receiver's right to a jury trial.

The Magistrate Judge then turned to the promissory notes and corresponding mortgages, finding the jury waivers contained in those documents sufficiently conspicuous and therefore

2

enforceable. *See* Dkt. 220 at 6-8. The Magistrate Judge concluded, however, that the enforceable jury waiver provisions "relate to the two Scoop Real Estate transactions, not any commercial deposit accounts." *Id.* at 9. Defendant objected to the Report and Recommendation (Dkt. 223), but only to that part recommending that the purported jury trial waivers incorporated into the account signature cards are ineffective.

## II. STANDARD

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). When the report and recommendation concerns dispositive matters or prisoner petitions, those portions of the report and recommendation to which objections are made are accorded *de novo* review. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Objections must specifically identify those findings objected to and "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see Leatherwood v. Anna's Linens Co.*, 384 Fed. Appx. 853, 857 (11th Cir. 2010). As to nondispositive matters, however, the district court may modify or set aside any portion of the report and recommendation only if it is "clearly erroneous" or "contrary to law." § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A motion to strike a jury trial demand is not a "dispositive" motion. The Report and Recommendation will therefore be examined under a "clearly erroneous" or "contrary to law" standard.

Nevertheless, the report and recommendation is reviewed for "clear error" even in the absence of objections. *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006). The district court may always "undertake 'further review . . ., *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006) (quoting *Thomas v. Arn*, 474 U.S. 140, 154 (1985)).

3

## III. DISCUSSION

Federal Rule of Civil Procedure 39 provides that when a jury trial has been demanded, "[t]he trial on all issues so demanded must be made by jury unless: . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury." Fed. R. Civ. P. 39(a)(2). The right to a jury trial in suits at common law is protected by the Seventh Amendment, but "[a] party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 Fed. Appx. 820, 823 (11th Cir. 2006); *see Simler v. Conner*, 372 U.S. 221, 222 (1963).

In assessing whether a jury trial has been waived, courts in the Eleventh Circuit consider "the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable." *Bakrac*, 164 Fed. Appx. at 824.[1] No single factor is conclusive. Rather, the question is whether, "in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." *Wells Fargo Bank, N.A. v. Osprey Commerce Ctr., LLC*, No. 8:13-cv-1738-T-27MAP, 2014 WL 1271460, at *2 (M.D. Fla. Mar. 26, 2014) (Whittemore, J.) (quoting *Allyn v. W. United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004)). "The right to trial by jury is fundamental, and this Court 'indulges every reasonable presumption against waiver.'" *Mega Life & Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1403 (11th Cir. 2009) (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993)).[2] In accordance with the fundamental nature of the right to a jury

---

[1] Whether the Seventh Amendment right to a jury trial has been waived is a federal question controlled by federal law. *Tracinda Corp. v. DaimerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007); *see Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law.").

[2] *See Brookhart*, 384 U.S. at 4 ("There is a presumption against the waiver of constitutional rights.").

trial, waivers "should be scrutinized with utmost care." *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930 (11th Cir. 1995) (internal quotations omitted).

### A. *The Victory Fund Account Signature Card.*

Defendant first argues in a footnote (Dkt. 223 at 4. n.4) that the Victory Fund account signature card contained a jury waiver provision by incorporating SouthTrust Bank's Rules and Regulations Governing Deposit Accounts. This argument, as well as the SouthTrust Rules and Regulations,[3] are presented for the first time in Defendant's objections to the Report and Recommendation and relegated to a footnote. They will therefore not be considered. *See In re Photochromic Lens Antitrust Litig.*, Case No. 8:10-md-02173-JDW-EAJ, 2014 WL 1338605, at *15 (M.D. Fla. Apr. 3, 2014) (Whittemore, J.) ("A district court has the discretion to decline to address an argument not raised before the magistrate judge . . . ."); *see also Williams v. McNeil*, 557 F.3d 1287, 1290-91 (11th Cir. 2009) ("[T]o require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court.") (quoting *U.S. v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)); *Paterson-Leitch Co. v. Mass. Municipal Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) ("[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and–having received an unfavorable recommendation–shift gears before the district court.").

Even if the argument and document were considered, they would not support a waiver of the Receiver's right to a jury trial. As noted, there is no express jury trial waiver in the SouthTrust

---

[3]The Receiver contends that Defendant improperly withheld this document in discovery. That contention is not addressed here.

Victory Fund account signature card. Rather, by signing the account card, the depositor "agrees to abide by and be bound by [SouthTrust] Bank's Rules and Regulations Governing Deposit Accounts . . ., and by all amendments to [illegible] of them from time to time on notice of the depositor." Dkt. 175-1 at 16. The provision of the SouthTrust Rules and Regulations that Defendant contends constitutes a jury trial waiver is, in fact, an arbitration clause. On page 13 of a small-print, 16-page document is found Section 34, titled "ARBITRATION OF DISPUTES." Dkt. 223-1 at 15. The first paragraph of the arbitration provision is in all capital letters, and the final sentence of the 20-line paragraph reads: "YOU AND WE HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY OF ALL SUCH CLAIMS." *Id.* The provision then sets forth the rules governing arbitration proceedings between depositors and the bank.

This purported jury trial waiver provision is not conspicuous. It falls at the end of the first paragraph of a multi-paragraph section titled "Arbitration of Disputes." Unless the reader is specifically looking for terms indicating a waiver of the right to jury trial, this sentence would be difficult to find in the boilerplate language of the arbitration clause. Moreover, the terms of the Bank's Rules and Regulation would not have been negotiable, considering that the Rules and Regulations govern all of SouthTrust's depository relationships, and are evidently unilaterally amended from time to time. In addition, Defendant has presented no evidence that the purported waiver by way of this sentence was knowing or voluntary. On balance, considering the strong presumption against waiver of the Seventh Amendment right to a jury trial, the circumstances support the Magistrate Judge's finding that the right to a jury trial was not waived by Nadel signing the SouthTrust Victory Fund account signature card. *See World Wide Commc'ns, Inc. v. Rozar*, No. 96Civ1056(MBM)NRB, 1998 WL 386413, at *3 (S.D.N.Y. July 10, 1998) ("Communications has

thus failed to provide any authority for its assertion that the arbitration clause in the Dealer Agreement acts as a waiver of Networks' jury trial right, especially where Communications has waived enforcement of the arbitration provision."); *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 716 F. Supp. 268, 270 (S.D. Miss. 1989) (rejecting argument that unenforceable arbitration clause implicitly waived a right to a jury trial).

Defendant further contends that the SouthTrust Rules and Regulations (which did not contain a jury waiver) were superseded by the Wachovia Deposit Agreement (which did contain a jury waiver) when SouthTrust merged into Wachovia, and that as a result, the terms of the SouthTrust Victory Fund signature card were unilaterally amended to incorporate the jury waiver provisions of the 2004 Wachovia Deposit Agreement. Again, Defendant did not present this argument to the Magistrate Judge and it need not be considered. *See Williams*, 557 F.3d at 1290-91. Even if considered, Defendant nonetheless fails to demonstrate a knowing and voluntary waiver of the right to a jury trial.

Defendant argues that Nadel "acknowledged that the account agreements could be amended, and that he agreed, on behalf of Victory, to be bound by all such amendments." Dkt. 223 at 3. It contends that *Dasher v. RBC Bank (USA)*, 745 F.3d 111 (11th Cir. 2014) compels the conclusion that later iterations of Wachovia's depositor agreements superseded the SouthTrust Rules and Regulations in place when Nadel signed the Victory Fund card. These arguments present an overly broad reading of *Dasher*, which is distinguishable in several respects, including a fundamental difference in the contractual language that Defendant invokes to hold the Receiver to later versions of the depositor agreement.

In *Dasher*, the plaintiff signed an account agreement with RBC Bank containing an

arbitration agreement. *Id.* at 1114. Also contained in the RBC agreement was a provision concerning assignment of the rights to Dasher's account:

> We may transfer or assign our rights and obligations under the Agreement in whole or in part without notice or approval by you. . . . [T]he terms and conditions of the Agreement will be binding upon and inure to your benefit and our benefit as well as the benefit of your permitted successors and assigns and *our successors and assigns*.

*Id.* at 1117 (emphasis in original). The RBC agreement gave RBC and its successors and assigns "the right to change 'any part or parts of the Agreement' at any time pursuant to the RBC Agreement's amendment clause." *Id.* at 1118 (quoting RBC agreement). Furthermore, if RBC or its successors exercised their right to issue a new agreement, the amendment clause stipulated that "'the most current version of the Agreement *supersedes all prior versions* and will at all times govern.'" *Id.* (quoting RBC agreement) (emphasis in original).

When RBC was purchased by PNC Financial Services, PNC issued a revised account agreement without an arbitration provision governing the relationship with Dasher, "which Dasher accepted." *Id.* at 1114. When PNC moved to compel arbitration, the District Court found that Dasher "expressed his clear and definite intent to execute a new agreement by accepting the first RBC Agreement and then the superseding PNC Agreement," and therefore the latter agreement without an arbitration provision controlled. *Id.* at 1118. The Eleventh Circuit affirmed.

In Florida, as with the North Carolina law considered in *Dasher*, the novation of a prior agreement in favor of a superseding agreement "is controlled by the intention of the parties" and requires an agreement between the parties that the new contract will replace and extinguish the old one. *Lakeland Silex Brick Co. v. Jackson & Church Co.*, 168 So. 411, 413 (Fla. 1936); *Electro-*

*Protective Corp. v. Creative Jewelry by Kempf, Inc.*, 513 So. 2d 190, 192 (Fla. 5th DCA 1987).[4] Dasher explicitly agreed that the most current version of the PNC agreements would bind him, and the Eleventh Circuit found that he expressed a "clear and definite intent to execute a new agreement" and that he was presented with and accepted the new version of the deposit agreement without the arbitration clause.

In this case, however, there is no such express language calling for the automatic acceptance of new versions of the Deposit Agreement. Nadel agreed in the Victory Fund card only to be bound by amendments made to the SouthTrust Rules and Regulations "on notice to the depositor." Dkt. 175-1 at 16. This language does not demonstrate a "clear and definite intent" to be bound to future unilateral amendments to the Deposit Agreement by successor entities. Nor has Defendant demonstrated that Nadel was given "notice" that a jury waiver provision was added to the rules governing his deposits. In sum, Defendant's contention is contrary to the presumption against waiver of the right to jury trial, *Mega Life*, 585 F.3d at 1403, and the general rule that a waiver of constitutional rights must be knowing and voluntary. See *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary, but must also be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

### B. *The Scoop Real Estate Account Signature Card*

When Nadel opened the account at Wachovia for Scoop Real Estate, he signed the Signature

---

[4]See *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) (under Florida law, four elements are required to effectuate a novation: (1) a previously valid contract; (2) agreement of the parties to cancel that contract; (3) a new valid and binding contract; and (4) agreement of the parties that the new contract will replace and extinguish the old one).

Card of the Deposit Account Application. Dkt. 175-1 at 18. Appearing approximately two inches above his signature in the first paragraph is the following text in very small print:

> To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.
> SIGNATURE CARD - The words I, me and my which also mean we, us and our, if more than one customer, mean the person(s) signing this agreement. It is agreed that Wachovia will recognize the signatures below in the payment of funds or in the transaction of other business for the account(s). *I/We agree to the terms and conditions of the Wachovia Deposit Agreement for this account(s) and authorize Wachovia to establish my/our account(s).* I/We hereby acknowledge receipt of a Deposit Account Agreement, Schedule of Fees, and Rate Disclosure (if applicable). Refer to Right of Survivorship provisions for accounts opened in NC, TN and VA.

Dkt. 175-1 at 18 (emphasis added). When Nadel signed the card, the October 28, 2004 version of the Wachovia Deposit Agreement was in effect. Dkt. 209 ¶ 8. The table of contents for this 14 page document lists Section 47 as "Arbitration of Disputes/Waiver of Jury Trial and Participation in Class Actions." Dkt. 175-1 at 4. Section 47 appears on page 11 of 14, as follows:

> **47. ARBITRATION OF DISPUTES/WAIVER OF JURY TRIAL AND PARTICIPATION IN CLASS ACTIONS.** If either you or we request, any dispute or claim concerning your account or your relationship to us will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code. Arbitration hearings will be held in the city where the dispute occurred or where mutually agreed. A single arbitrator will be appointed by the agreement of the parties, or, if the parties are unable to agree, by AAA and will be a retired judge or attorney with experience or knowledge in banking transactions. Each party will pay its own costs and attorney's fees. A court may enter a judgment on the award. Any statute of repose or limitations period which would provide a defense to a claim brought in a lawsuit in state or federal court will also apply with equal force and effect to any arbitration brought pursuant to this section.
>
> To the extent permitted by law, if any dispute or claim results in a lawsuit, and neither you nor we have elected or requested arbitration, you and we knowingly and voluntarily agree that a judge, without a jury, will decide the case. The arbitration or trial will be brought individually and not as part of a class action. If it is brought as a class action, it must proceed on an

> individual (non-class, non-representative basis). YOU UNDERSTANDAND [*sic*] KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BEREPRESENTED [*sic*] INANY [*sic*] CLASSACTION [*sic*] LAWSUIT.

Dkt. 175-1 at 6.

The Magistrate Judge concluded that the jury waiver provision in the final sentence of Section 47 is not conspicuous because it is incorporated by reference into the account signature card and buried in the middle of 78 small-print provisions condensed into 12 pages. Dkt. 220 at 5. The Magistrate Judge also found that while bargaining power between the parties was equal, the waiver provision "does not satisfy negotiability standards applied by other courts" because "[i]t is buried in the middle of a document filled with boilerplate language and does not appear to be negotiable." Dkt. 220 at 6. Finding these facts determinative, the Magistrate Judge concluded that Nadel did not knowingly and voluntarily agree to the jury waiver provision for the account.

Defendant objects to this conclusion, arguing that the provision is conspicuous because it appears in all capital letters under a bold, all capital letters heading containing the phrase "WAIVER OF JURY TRIAL," and because the Eleventh Circuit and other courts have held that similarly formatted contractual provisions in bank deposit agreements are conspicuous. Dkt. 223 at 6. Defendant argues that in *In re Checking Account Overdraft Litigation MDL No. 2036*, 672 F.3d 1224 (11th Cir. 2012), the "Eleventh Circuit recently held that a similarly formatted contractual provision in a bank's deposit agreement is conspicuous." In that case, however, the court addressed the enforceability of an arbitration clause, holding that it was not procedurally unconscionable. *Id.* at 1230. Although the court determined that the provision was conspicuous, it did so with the

understanding that there is no requirement that arbitration provisions be conspicuous.[5] Moreover, even though the provision was buried on the twenty-first page of a forty-three page document, it was conspicuous because the first two pages of the deposit agreement referenced "**BINDING ARBITRATION**" provisions three times, and the second page contained a paragraph stating "<u>**THIS AGREEMENT CONTAINS PROVISIONS FOR BINDING ARBITRATION**</u>." *Id.* at 1229. The Wachovia Rules and Regulations contain no such language conspicuously referencing the jury waiver provision.

The other cases cited by Defendant are likewise distinguishable in one critical aspect. In none of the cases upholding a jury trial waiver did the court address a waiver provision incorporated by reference into the document signed by the party requesting a jury trial. In contrast, the jury waiver provision of the Wachovia Rules and Regulations was incorporated by reference in very small print above Nadel's signature on the account signature card, militating against a finding of a knowing waiver. *See, e.g., Barkan v. Dunkin' Donuts, Inc.*, 520 F. Supp. 2d 333, 343 (D.R.I. 2007) (refusing to incorporate by reference jury waiver provision for multiple reasons, including adhesive nature of contract). In addition, Nadel never signed the Rules and Regulations, and Defendant has not presented any evidence that Nadel was provided the Rules and Regulations or directed to the jury waiver provision prior to signing the account signature card. Moreover, Defendant does not contest the Magistrate Judge's finding that the terms of the agreement were not negotiable. It therefore cannot be said that the Magistrate Judge's conclusion that the provision is not enforceable was clearly erroneous or contrary to the law.

---

[5]In any event, decisions finding arbitration clauses enforceable are not persuasive because there is a federal presumption in favor of arbitration, but a strong presumption against the waiver of a jury trial. *Compare Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), *with Mega Life*, 585 F.3d at 1403.

Accordingly, the Report and Recommendation (Dkt. 220) is **APPROVED** and **ADOPTED** in full. The Motion to Strike Plaintiff's Jury Trial Demand (Dkt. 175) is **GRANTED** *in part* and **DENIED** *in part*.

The parties are directed to confer and propose the manner in which the case will be tried, considering this ruling.

**DONE AND ORDERED** this  5th  day of August, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record