# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BURTON W. WIAND, ESQ., as**
**Court-Appointed Receiver for**
**SCOOP REAL ESTATE, L.P., et al.,**

     **Plaintiff,**

**vs.**                                         **Case No.: 8:12-CV-557-T-27EAJ**

**WELLS FARGO BANK, N.A., et al.,**

     **Defendants.**
_____/

## REPORT AND RECOMMENDATION

     Before the Court are Defendant Wells Fargo Bank, N.A.'s ("the Bank's") **Motion for an Award of Expenses Including Reasonable Attorneys' Fees, and Incorporated Memorandum of Law and Local Rule 3.01(g) Certificate** (Dkt. 327), the Bank's **Motion to Tax Costs Against Plaintiff and Incorporated Memorandum of Law and Local Rule 3.01(g) Certificate** (Dkt. 329), Plaintiff Burton Wiand's ("the Receiver's") **Opposition to [the Bank's] Motion for an Award of Expenses Including Reasonable Attorneys' Fees** (Dkt. 333), and the Receiver's **Opposition to [the Bank's] Motion to Tax Costs Against Plaintiff** (Dkt. 334).[1]

_____

[1] These motions have been referred to the undersigned for consideration and issuance of a Report and Recommendation. (Dkt. 327) See 28 U.S.C. § 636(b)(1)(B); Local Rules 6.01(b) and 6.01(c), M.D. Fla.

## Background

Plaintiff Burton W. Wiand is the court-appointed Receiver[2] for six hedge funds that lost millions of dollars during a decade-long Ponzi scheme orchestrated by Arthur Nadel ("Nadel").[3] Through the course of this litigation, the Receiver has brought claims for fraud, breach of fiduciary duty, conversion, negligence, fraudulent transfer, and unjust enrichment against the Bank.[4]  Nadel maintained accounts at SouthTrust and Wachovia to facilitate the Ponzi scheme.  On February 9, 2015, summary judgment in favor of the Bank was granted as to the Receiver's remaining claims of negligence, fraudulent transfer, and unjust enrichment based on Florida law (Dkt. 325), and final judgment in favor of the Bank was entered on February 10, 2015 (Dkt. 326).

As the prevailing party, the Bank moves for an estimated $4 million award of attorneys' fees and for an award of costs in the amount of $63,657.47.[5] (Dkt. 327, 329)

---

[2]  The Receiver was appointed by United States District Judge Richard A. Lazzara in S.E.C. v. Nadel, Case No. 8:09-CV-87-T-26TBM (M.D. Fla. Jan. 21, 2009) (the "Receivership Action").

[3] Scoop Real Estate, L.P. ("SRE") and Victory Fund, LTD. ("Victory Fund") are referred to as the "Customer Hedge Funds," while Valhalla Investment Partners, L.P, Victory IRA Fund, LTD., Viking IRA Fund, LLC, and Viking Fund, LLC ("Viking Fund") are referred to as the "Noncustomer Hedge Funds."  Nadel opened accounts at Wachovia Bank ("Wachovia") for the Customer Hedge Funds in his capacity as president of the general partner of the hedge funds. Nadel fraudulently opened accounts for Noncustomer Hedge Funds Valhalla Investment Partners, L.P. and Viking Fund at Wachovia. (Dkt. 37 at 5)  Accordingly, those entities with accounts fraudulently opened by Nadel are not customers of Wachovia. (Id.)  No accounts were opened in the name of Victory IRA Fund, Ltd. or Viking IRA Fund, LLC. (Id.)

[4] Wells Fargo is successor-in-interest to Wachovia, and Wachovia is successor-in-interest to SouthTrust Bank.  Wells Fargo merged with Wachovia on December 31, 2008.  Wachovia merged with SouthTrust Bank in 2004. "It is undisputed that Wells Fargo is now responsible for any liability that Wachovia or SouthTrust may have incurred." Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1242 n.1 (M.D. Fla. 2013).

[5] The Bank seeks an initial determination of fees entitlement and requests an opportunity to provide evidentiary support at a later date. (Dkt. 327 at 12)

In support of its motion for attorneys' fees, the Bank relies on contractual provisions in certain banking documents that it claims entitle the Bank to an award of attorneys' fees. The Receiver responds that the contractual provisions cited by the Bank, strictly construed, do not support an award of attorneys' fees in this action. Furthermore, even if the contractual provisions entitled the Bank to an award of fees, the Receiver contends that he has the power to reject any executory contract entered into prior to the receivership if he finds that adopting the contract would be unprofitable or undesirable. The Receiver also asserts that the Bank is not entitled to recover attorneys' fees and costs incurred in connection with the claims brought by the Noncustomer Hedge Funds. Finally, the Receiver argues that the Bank's claims for fees are claims against the receivership estate that must be filed in the Receivership Action.[6]

Additionally, the Bank, as the prevailing party, moves for taxation costs under Rule 54(d), Fed. R. Civ. P., 28 U.S.C. § 1920, and Local Rule 4.18, M.D. Fla. The Receiver opposes an assessment of costs, arguing that the Court should exercise its discretion by denying the Bank's request as this case was brought in good faith and an award of costs would further injure the victims of Ponzi scheme. Alternatively, if the Court were to assess costs, the Receiver contends that the Bank seeks costs that are not taxable under Rule 54(d), Fed. R. Civ. P., and 28 U.S.C. § 1920.

## Discussion

### A.    Whether the Bank has a Contractual Entitlement to Attorneys' Fees

The Bank asserts that it is entitled to attorneys' fees based on certain contractual provisions in documents related to accounts and lending agreements established by the Customer Hedge Funds

---

[6] It is true that any award of fees and/or costs must ultimately be approved by the court having jurisdiction in the Receivership Action. However, the instant motion addresses the threshold question of entitlement to fees.

and Nadel.[7] "Florida conforms to the 'American Rule' under which attorneys' fees are awarded only when permitted by statute or contract." Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1329 (11th Cir. 1998) (citation omitted).

"Under Florida law, a contractual attorney's fee provision must be strictly construed." Succar Succar v. Safra Nat'l Bank of New York, 237 F. App'x 526, 528 (11th Cir. 2007) (per curiam) (unpublished)[8] (internal quotations and citation omitted).  "Florida law . . . requires contractual provisions for attorney's fees to 'unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable . . . .'" Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc., 441 F. App'x 644, 645 (11th Cir. 2011) (per curiam) (unpublished) (quoting Sholkoff v. Boca Raton Cmty. Hosp., Inc., 693 So. 2d 1114, 1118 (Fla. 4th DCA 1997)).  "[I]n Florida, as in most jurisdictions, an ambiguous contract term is construed against the drafter.  This principle applies with particular force where the language was selected to benefit the drafter." Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1329 n.2 (11th Cir. 2005) (internal citations omitted).   "Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced.  Trial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith." Lashkajani v. Lashkajani, 911 So.2d 1154, 1158 (Fla. 2005).

The Receiver asserts that the contractual provisions cited by the Bank do not entitle the Bank

---

[7] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1348 as the Receiver brought his claims against the Bank at the direction of an officer of the United States. (Dkt. 21) The parties cite both federal and Florida law in support of their positions regarding an award of attorneys' fees in this case; whether federal or Florida law applies in this case does not appear to be a material issue, although the parties have not addressed this issue in their submissions.

[8] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

to attorneys' fees. The Court will address each provision separately.[9]

      1.      The Victory Deposit Agreement

      The Bank contends that Paragraph 20 of the SouthTrust Bank Rules and Regulations Governing Deposit Accounts ("the Rules"), as amended effective September 4, 2001, entitles it to fees.[10] On May 1, 2001, Victory opened a deposit account at SouthTrust Bank. (Dkt. 155 ¶ 5). On December 27, 2002, Nadel signed a replacement business signature card for Victory, in which he agreed, on behalf of Victory, "to abide by and be bound by" the Rules. (Dkt. 156 Ex. 2 at 4) Paragraph 20 of the Rules provides:

> **20. Adverse Claim to the Account.** In the event of any dispute with respect to the account, such as a dispute over who has the right to make withdrawals from the account or who is the owner of the funds on deposit to the account, and in the event of any actual or potential adverse claim to the account, we may refuse to pay any funds from the account for a reasonable time, without advance notice to you, whether or not the adverse claimant has complied with the requirements of any statute regarding adverse claims to deposits, and/or we may interplead the funds in the account in a court of appropriate jurisdiction, naming all of the claimants to the account as defendants in the action. You agree to reimburse us for all expenses, including attorneys' fees, we incur in connection with any dispute or claim, whether or not we become involved in a legal action, and you authorize us to debit the account for such amounts, without advance notice to you. We will be entitled to assert against funds in the account any claim we have against any of the depositors either before interpleading the funds or in connection with the interpleader action. If the account becomes involved in legal proceeding, we may limit your right to use the account until the dispute is resolved.

(Dkt. 223 Ex. 1 ¶ 20)

---

[9] While avoiding excessive block quotations is preferred, each contractual provision needs to be quoted in full to properly address the grounds upon which the parties make their arguments. The Receiver includes a side-by-side comparison of the Bank's quoted provisions and the complete provisions in its response. (Dkt. 333 at 4-5, 8-9)

[10] The Bank submitted, for the first time, the SouthTrust Bank Rules and Regulations in support of its objections to the Report and Recommendation regarding the Bank's motion to strike jury trial demand. (Dkt. 223 Ex. 1) Although the Receiver contends that the document was improperly withheld during discovery, the Receiver is now on notice as to this document.

While the Bank cited a condensed version of this provision in support of its argument that the provision entitles the Bank to attorney's fees, this provision, read in its entirety, relates only to adverse claims by a third party to the account. As the Receiver notes, "adverse claims" is a term of art that relates to a third-party's purported property interests in a financial asset. See U.C.C. § 8-102 ("'Adverse claim' means a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset.'); see also Fla. Stat. § 655.83 (addressing an adverse claim to a deposit or fiduciary account). Here, the Receiver, standing in the shoes of Victory, has not asserted any adverse claims against the Bank as a third party, and this provision in the Rules is inapposite in determining whether the Bank is entitled to attorneys' fees. Strictly construed, this provision does not entitle the Bank to attorneys' fees under the claims brought by the Receiver. Accordingly, as this provision is the only provision cited, the Bank is not entitled to recover attorneys' fees under the terms of the Rules related to the Victory deposit account.

## 2.    The SRE Deposit Agreement

The Bank also contends that a Wachovia Deposit Agreement and Disclosures for Commercial Accounts ("Deposit Agreement"), effective October 28, 2004, entitles it to an award of attorneys' fees regarding SRE. On September 25, 2007, SRE opened a deposit account at Wachovia with a signature card signed by Nadel, which provides that SRE agreed to the terms and conditions of the Deposit Agreement. (Dkt. 175 Ex. 1 at 18) The Bank relies on the following provision:

**CONFLICTS/DISPUTES INVOLVING THE ACCOUNT.** If we receive an actual or potential claim from a third party regarding your account, any deposit, transfer, credit or other transaction involving your Account, or conflicting instructions or claims from authorized signers, you hereby grant to us full discretion

6

to freeze your Account and not honor any further transactions until the claim is resolved, or we may, at our discretion, choose not to pay out any money from your account until we receive consistent instructions from all parties or a court order, all without liability to you.  We may also, without liability to you, close the account and issue a check made payable to you and each authorized signor or you and each claimant, as we deem necessary, or we may interplead the funds into court.  You agree to reimburse us for any loss, costs, or expenses including, without limitation, reasonable attorneys' fees and the costs of litigation (to the extent permitted by law) that we incur as a result of any dispute involving your account, and you authorize us to deduct any such loss, costs, or expenses from your account without prior notice to you.  This obligation includes any dispute between you and us involving the account and situations where we become involved in any dispute between you and an authorized signor, another joint owner, or a third party claiming an interest in the account.  It also includes any situation where you, an authorized signor, another joint owner, or a third party takes action with respect to the account that causes us, in good faith, to seek the advice of counsel, whether or not we actually become involved in a dispute.

(Dkt. 159 Ex. 6 ¶ 40)

This provision is similar to the provision in the Victory Deposit Agreement in that it provides for the Bank's entitlement to fees in the event of claims raised by third parties.  But the provision is more expansive in that it provides that the account holder "agree[s] to reimburse us for any loss, costs, or expenses including, without limitation, reasonable attorneys' fees and the costs of litigation (to the extent permitted by law) that we incur as a result of any dispute involving your account . . .. This obligation includes any dispute between you and us involving the account and situations where we become involved in any dispute between you and an authorized signor, another joint owner, or a third party claiming an interest in the account" (Id.)  While the Bank asserts that the language "any dispute between you and us involving the account" supports an award of attorneys' fees, the provision, in its entirety, is ambiguous as to whether it applies to any claims or only those claims involving third-party disputes.  The paragraph primarily addresses claims involving third parties, and the initial sentence and the final sentence of the provision discuss only third-party

claims.  Therefore, a reasonable interpretation of the contractual provision as a whole is that it provides for fees incurred only regarding third-party disputes.  As the Bank likely drafted the Deposit Agreement, any ambiguity must be resolved against the Bank. See generally Terminix, 432 F.3d at 1329 n.2.  Paragraph 40 does not support an award of attorneys' fees for the Bank.

> 3.     The SRE Loan Documents

The Bank relies on provisions contained within a BB&T promissory note and mortgage documents signed January 4, 2005 (Dkt. 162 Ex. 1) and a Rite Aid promissory note signed May 23, 2005 and mortgage documents signed on May 24, 2005 (Dkt. 164 Ex. 1) in support of an award of attorneys' fees.  These documents were executed by Nadel on behalf of SRE.

The Bank relies on the following provision in the promissory notes:

> **ATTORNEYS' FEES AND OTHER COLLECTION COSTS.**  Borrower shall pay all of Bank's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

(Dkt. 162 Ex. 1 at 2; Dkt. 164 Ex. 1 at 2)  Obligations "refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101) between Borrower and Bank, or its affiliates, whenever executed." (Dkt. 162 Ex. 1 at 2; Dkt. 164 Ex. 1 at 2)

Also, the Bank relies on the following two provisions contained within its Security Agreements with SRE:

> **1.11.  Actions by Mortgagee to Preserve the Security of this Mortgage.**  If [Mortgagor/Grantor] fails to make any payment or do any act as and in the manner provided for in this [Mortgage/Deed of Trust] or the Note, Mortgagee, in its own discretion, without obligation so to do and without notice to or demand upon [Mortgagor/Grantor] and without releasing [Mortgagor/Grantor] from any obligation,

may make or do the same in such manner and to such extent as [Mortgagee/Lender] may deem necessary to protect the security hereof.  [Mortgagor/Grantor] will pay upon demand all expenses incurred or paid by [Mortgagee/Lender] (including, but not limited to, attorneys' fees and court costs including those of appellate and bankruptcy proceedings) on account of the exercise of any of the aforesaid rights or privileges or on account of any litigation which may arise in connection with this [Mortgage/Deed of Trust] or the Note or on account of any attempt, without litigation, to enforce the terms of this [Mortgage/Deed of Trust] or the Note.  In case the [Mortgaged Property/Property] or any part thereof shall be advertised for foreclosure sale and not sold, [Mortgagor/Grantor] shall pay all costs in connection therewith.

**6.14. Costs.**  [Mortgagor/Grantor] shall pay all and singular the costs, charges and expenses, including without limitation attorneys' fees, paralegals' fees, sales tax on such fees or costs, if any (regardless of whether suit is or other proceedings are instituted, and for all arbitration, administrative, bankruptcy and other proceedings) and abstract costs, reasonably incurred or paid at any time by [Mortgagee/Lender] because of the failure of [Mortgagor/Grantor] to perform, comply with, and bide by each and every stipulation, agreement, condition and covenant of the Note, this [Mortgage/Deed of Trust] or any other document executed herewith.

(Dkt. 162 Ex. 1 at 14, 28; Dkt. 164 Ex. 1 at 8-9, 31)

Here, the Receiver's claims under FUFTA were to void the transfers and security interests and loan payments that were already transferred, not to enforce or collect any obligations as to any current or future indebtedness.  The Bank's defense of these claims is not implicated by these provisions.  Additionally, the provisions of the security agreements pertain to actions the Bank must take if SRE failed to comply with the mortgage terms or its obligations under the agreement; they do not apply to recovery of fees for defending fraudulent transfer claims.  Accordingly, these provisions are not applicable to the Receiver's claims in this action.  See, e.g., Commerce First Fin., LLC v. Summerlin Bass, LLC, No. 2:10-CV-290-FTM-36, 2011 WL 7316326, at **2-3 (M.D. Fla. Sept. 13, 2011) (declining to award attorneys fees because "an action for fraudulent transfer is not an action to collect or to secure any obligation under the Promissory Note" and "[t]his lawsuit for fraudulent transfer is not a foreclosure action or a remedy under the terms of the Mortgage or Note")

9

report and recommendation adopted, No. 2:10-CV-00290-FTM-36, 2011 WL 4902988 (M.D. Fla. Oct. 14, 2011).

      4.      Laurel Preserve Loan Documents

The Laurel Preserve agreement was entered into between the Bank's predecessor in interest, Wachovia Bank, and Laurel Preserve, LLC ("Laurel Preserve"). Laurel Preserve is not a party to this action as the Receiver did not bring claims on behalf of Laurel Preserve. Because the Receiver did not bring claims on behalf of Laurel Preserve in this action, these loan documents are irrelevant to the Bank's claim for attorneys' fees.

      5.      Assertion that all claims are inextricably intertwined

The Bank also asserts that it is entitled to recover its attorneys' fees for the claims brought on behalf of the non-customer Hedge Funds because the claims are inextricably intertwined, citing Moralez v. Whole Foods Mkt., Inc., No. C 12-01072 CRB, 2013 WL 3967639, at *3 (N.D. Cal. July 31, 2013). (Dkt. 327 at 10-11) It is true that contractual language that permits fees for proceedings or litigation "arising out of this Contract" applies to all claims "inextricably intertwined" with the contract. Dolphin LLC v. WCI Comms., Inc., 715 F.3d 1243, 1250–51 (11th Cir. 2013). However, courts in this district have declined to award fees for the entire litigation when only certain claims provided for an award of fees. See Durden v. Citicorp Trust Bank, FSB, 763 F. Supp. 2d 1299, 1307 (M.D. Fla. 2011) ("Nevertheless, it is also apparent that although the services performed and fees rendered were often intertwined, Defense counsel also 'spent a separate and distinct amount of time' in some respects on the non-FSIPA fraud claims."); Action Sec. Serv., Inc. v. Am. Online, Inc., No. 603-CV-1170-ORL-22DAB, 2007 WL 191308, at *2 (M.D. Fla. Jan. 23, 2007) ("The Court finds that AOL is not entitled to fees for the entire case, but is only entitled to such fees as it can show are

related to the civil theft count-the only claim for which it has asserted entitlement.") aff'd sub nom., 241 F. App'x 619 (11th Cir. 2007).  Here, the Bank seeks only a determination as to its entitlement to fees; the Bank has not provided any documentary evidence in support of the amount of fees it seeks.

In any event, as discussed above, the contractual provisions cited by the Bank do not entitle it to an award of fees.  Even if one or more of the contractual provisions supported the Bank's claim of an award of fees, the Bank has not demonstrated that fees incurred on account of the claims brought on behalf of the Non-Customer Hedge Funds are so intertwined that they cannot be distinguished in a fee petition.

## B.  Whether the Receiver Can Repudiate the Agreements the Bank Cites

In the alternative, even if one or more of the provisions supports the Bank's fees claim, the Receiver maintains that he has repudiated these provisions and previously rejected the enforceability of the contracts' provisions.  The Receiver contends that the provisions for attorneys' fees can be classified as executory contracts which a receiver is entitled to repudiate.

The Receiver states that he "has tacitly rejected the Deposit Agreements in previous filings by challenging the enforceability of their provisions" and that he has consistently rejected the SRE loan documents. (Dkt. 333 at 16)  Even if this is true, while it is one thing to permit the Receiver to repudiate executory contracts which he determines are unprofitable or undesirable within a reasonable period of time after being appointed,[11] it is quite another to permit the Receiver to repudiate contracts at this late stage of the litigation where the Receiver is potentially liable for

---

[11] A "receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor, if, in his opinion, it would be unprofitable or undesirable to do so; and he is entitled to a reasonable time to elect whether to adopt or repudiate such contracts." U.S. Trust Co. v. Wabash W. Ry. Co., 150 U.S. 287, 299-300 (1893).

substantial attorneys' fees.

In any event, because the contractual provisions do not support the Bank's claims for attorneys' fees, it is unnecessary to address this argument further.

## C.     Motion for Costs

In its motion, the Bank seeks recovery of the following costs: (1) clerk fees in the amount of $350.00; (2) service of process fees in the amount of $1,869.91; (3) court reporter and deposition costs in the amount of $40,346.92; (4) witness fees in the amount of $1,746.14; and (5) printing and copying costs in the amount of $19,344.50.   The total amount of costs sought by the Bank is $63,657.47.

The Receiver contends that the Court should exercise its discretion by not assessing costs as the Receiver brought this action in good faith and any award of costs would diminish amounts returned to the investors defrauded by Nadel.

"Unless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Rule 54(d)(1), Fed. R. Civ. P.   "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." Marx v. Gen. Revenue Corp., --- U.S. ----, 133 S. Ct. 1166, 1172, 185 L. Ed. 2d 242 (2013) (citation omitted).   "[T]he district court's discretion not to award the full amount of costs incurred by the prevailing party is not unfettered, since denial of costs is in the nature of a penalty for some defection on [the prevailing party's] part in the course of the litigation." Chapman v. AI Transp., 229 F.3d 1012, 1039 (11th Cir. 2000) (internal quotations and citations omitted).   "To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." Id.

12

Although the Receiver contends that he brought this action in good faith in an effort to recover money for defrauded investors, an award of costs in this case is appropriate as a denial of costs would penalize the Bank as a prevailing party. In bringing this action, the Receiver was aware that he could be responsible for an assessment of costs in the event he did not prevail, despite any good faith in the merits of his claims. Therefore, the Bank is entitled to an award of costs as the prevailing party.

Not all of the costs sought by the Bank are taxable. Rule 54(d), Fed. R. Civ. P., allows for recovery of those costs enumerated in 28 U.S.C. § 1920 ("§ 1920"). Arlington Cent. Sch. Bd. of Educ. v. Murphy, 548 U.S. 291, 301 (2006). The following costs may be taxed by a judge or clerk of any federal court:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A court can only award costs that are adequately described and documented. Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1340 (M.D. Fla. 2002). The prevailing party has the burden of establishing that costs are taxable. See id.

### 1. Clerk Fees

The Bank seeks $350.00 for the fee incurred in removing this action to federal court. The Receiver does not object to this cost, and it is properly taxable under Section 1920(1).

### 2. Costs for Service of Process

The Bank seeks $1,869.91 for costs incurred for private process servers. The Receiver

contends that the Bank improperly seeks taxation of costs for rush service and for costs in excess of $45.00.

Private process server fees may be taxed pursuant to § 1920 provided that the amount does not exceed the statutory fee of the U.S. Marshal authorized by 28 U.S.C. § 1921. U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000).  The Receiver incorrectly states that $45.00 is the maximum amount available for service of process as that is the $45.00 statutory fee authorized for service by the U.S. Marshal.  28 U.S.C. § 1921(c)(2) permits the Attorney General to establish the amount the U.S. Marshal may assess for service of process, which is set forth in 28 C.F.R. § 0.114. From December 19, 2008 to October 30, 2013, the fee for service of process by the U.S. Marshal was $55.00 per hour, plus travel costs and any other out-of-pocket expenses; effective October 30, 2013, the fee increased to $65.00 per hour. See Revision to United States Marshals Service Fees for Services, 78 Fed. Reg. 59817-01 (Sept. 30, 2013).  The amount of service of process by the U.S. Marshal may exceed the per-hour amount charged if it takes additional time to for the U.S. Marshal to serve process.  However, when the documentation from a private process server does not indicate the time expended to effectuate service or does not indicate the additional costs incurred by the private process server, courts limit recovery to the hourly rate charged by the U.S. Marshal for service. See James v. Wash Depot Holdings, Inc., 242 F.R.D. 645, 649-50 (S.D. Fla. 2007). Accordingly, any service of process without supporting documentation of time spent and additional costs effectuated before October 30, 2013 is limited to recovery of $55.00, while service of process effectuated on or after that date is limited to recovery of $65.00.

Additionally, the Receiver objects for the "Rush Fee" associated with service of six subpoenas.  The Receiver asserts that this amount is $50.00 when compared with the amount

14

associated with non-rushed service of process. While any fee for rush service is not compensable, the Court will limit the Bank's recovery to the minimum U.S. Marshal fee in effect at the time process was effectuated, which was $55.00 at the time five subpoenas were served and $65.00 at the time one subpoena was served. See Palma v. Safe Hurricane Shutters, Inc., 895 F. Supp. 2d 1268, 1271 n.2 (S.D. Fla. 2012) (noting that amount charged for certain subpoenas designated as "rush" was within the amount charged by the U.S. Marshal).

Next, the Receiver objects in part to a $55.25 witness fee for Neil Moody which is included on the invoice from the process server. (Dkt. 328 Ex. 1 at 30)  The maximum witness fee is $40.00. 28 U.S.C. § 1821.  As the Bank has not provided detail or documentation as to the amount paid in excess of $40.00, the Bank should recover the maximum $40.00 witness fee.

Additionally, the Receiver objects to a charge of $19.66 for shipping overnight to the process server in Colorado the subpoena for Neil Moody.  "Generally, delivery costs and express mail are not compensable under § 1920." Ivory v. Holme, No. 8:07-CV-2354-T-TBM, 2009 WL 1185309, at *2 (M.D. Fla. Apr. 30, 2009).  Reimbursement of this cost is inappropriate.

Finally, the Receiver objects to the service of process for Gianluca Morello.  Premier Process Service attempted to serve a trial subpoena on September 18, 2014 but Mr. Morello's wife stated that he was out of town. (Dkt. 328 Ex. 1 at 29)  On September 19, 2014, the process server was instructed to discontinue service.  The Receiver asserts that this subpoena was not "necessarily for use in the case" and is not taxable.  However, the docket shows that on August 15, 2014, Judge Whittemore entered an order stating that the case would be tried in Tampa beginning October 20, 2014 before the Honorable Michael H. Watson. (Dkt. 277)  On October 8, 2014, the trial was rescheduled for December 1, 2014. (Dkt. 304)  As the trial was still set for October 20, 2014 when

service was attempted on Mr. Morello, the Court concludes that this cost is taxable even though service of process was not effectuated upon Mr. Morello.

Accordingly, the amount for service of process should be reduced by $234.91 to account for fees in excess of the U.S. Marshal rate, the excessive witness fee, and the shipping charge. The Bank is entitled to costs for service of process in the amount of $1,635.00 under § 1920(3).

3.      Court Reporter and Deposition Costs

"Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed under § 1920(2). The Bank seeks $40,346.92 for costs expended in depositions, deposition videos, transcripts, and hearing transcripts. While the Receiver does not contest that all of the depositions were at least partially necessary for this case, he objects to certain costs that the Bank seeks. Specifically, the Receiver objects to an assessment of costs for optional services, costs for both transcripts and videotaped copies of the same deposition, and costs for pretrial hearing transcripts.

i.      Optional Services

"Where the deposition costs were incurred for the prevailing parties' convenience, such as to aid in thorough preparation or for the purposes of investigation only, the costs are not recoverable." Watson v. Lake Cnty., 492 F. App'x 991, 996 (11th Cir. 2012) (per curiam) (unpublished). The Receiver objects to the costs for shipping, exhibits, videotaped copy, expedited transcription, syncronized video, additional transcripts, DepoDisk/LitPack, summary, and condensed transcript as solely for the convenience of counsel are not reimbursable and requests that the amount be reduced by $8,187.45. (Dkt. 334 Ex. 1)

The Receiver correctly states that shipping costs related to the depositions are not taxable.

16

See Watson, 492 F. App'x at 997. Charges for expedited transcripts, condensed transcripts, and synchronized video depositions are not taxable under § 1920. See Tampa Bay Water v. HDR Eng'g, Inc., No. 8:08-CV-2446-T-27TBM, 2012 WL 5387830, at *19 (M.D. Fla. Nov. 2, 2012). Additionally, costs of DepoDisk/LitPack are not taxable. See Powell v. The Home Depot, U.S.A., Inc., No. 07-80435-CIV, 2010 WL 4116488, at *9 (S.D. Fla. Sept. 14, 2010) (denying assessment of costs for scanning, disk copies, mini-scripts, and CD litigation packages as extra services only for the convenience of counsel) report and recommendation adopted, 2010 WL 4102933 (S.D. Fla. Oct. 18, 2010). Furthermore, the costs for an additional transcript and for a summary are inappropriate as these are solely for the convenience of counsel. See Kidd v. Mando Am. Corp., 870 F. Supp. 2d 1297, 1299 (M.D. Ala. 2012).

"Where a party properly notices a videotaped deposition and no objection was made, it is appropriate to award costs for videotaping and transcribing the deposition." Tampa Bay Water v. HDR Eng'g, Inc., No. 8:08-CV-2446-T-27TBM, 2012 WL 5387830, at *19 (M.D. Fla. Nov. 2, 2012) (citing Morrison v. Reichhold Chems., Inc., 97 F.3d 460, 464–65 (11th Cir. 1996)). Accordingly, the Bank's request for videotaped copies is appropriately taxed. Additionally, the Bank's request for costs for exhibits to deposition transcripts is appropriate under § 1920(4). See id. ("In this document-intensive case, copies of exhibits were necessary for understanding and accurately preserving the testimony of the dozens of fact and expert witnesses that were deposed.").

Therefore, the Bank's requests for costs related to deposition transcription should be reduced by $6,731.06, the total of costs sought for non-reimbursable items.

ii.     *Deposition Transcripts*

The remainder of the costs sought by the Bank for depositions relate to costs incurred for

deposition transcripts. The costs of deposition transcripts are authorized by § 1920(2). See Scelta, 203 F. Supp. 2d at 1341 (citing W&O, Inc., 213 F.3d at 620). After deducting the amounts sought for non-reimbursable optional services, discussed supra, at (C)(3)(I), the total costs incurred by the Bank for deposition transcripts amount to $32,653.86.

### iii.    Pretrial Hearing Transcripts

The Bank seeks costs for transcripts from certain pretrial hearings. "Movants seeking to tax the cost of pretrial hearing transcripts must show that the pretrial hearings for which transcript costs are sought limited and clarified issues which were to be heard at a lengthy trial and were of a magnitude that a transcript was needed to determine how the trial would proceed." Ferguson v. Bombardier Servs. Corp., No. 8:03-CV-539-T-30MSS, 2007 WL 601921, at *4 (M.D. Fla. Feb. 21, 2007). In its motion, the Bank states that it "obtained transcripts of hearings in this case and of Arthur Nadel's bail hearing, all of which were necessarily obtained for use in this case." (Dkt. 329 at 9) However, the Bank has not met this burden in demonstrating how these transcripts limited or clarified issues, and the assessment of costs for the pretrial hearing transcripts is improper. The amount for transcription costs should be reduced by $962.00.

Accordingly, the Bank is entitled to transcription costs related to depositions in the amount of $32,653.86 pursuant to § 1920.

### 4.    Witness Fees

The Bank seeks $1,746.14 for costs incurred in paying witnesses to attend depositions or trial. The Receiver does not object to these costs except for the excessive fee requested for Neil Moody, discussed supra, at (C)(2).

18

    5.      Costs of Printing and Copying

The Bank seeks $19,344.50 for printing and copying of papers necessarily obtained for use in this case.  The Receiver objects to all of the printing and copying costs sought by the Bank.

"[I]n evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." W&O, Inc., 213 F.3d at 623.  Copies attributable to discovery are recoverable under § 1920(4). Id.  The Bank states that it incurred four charges for printing documents related to document production and to print out the Receiver's expert reports and exhibits.  Despite the Receiver's objection that the Bank has failed to itemize these costs, the documentation is sufficient.

The Receiver also objects to the Bank's request for $14,381.56 for costs incurred relating to e-discovery.  The Bank cites Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp., 2 F. Supp. 3d 1306, 1318 (N.D. Ga. 2014) for the proposition that e-discovery costs such as uploading documents to a database and converting electronic digital files to native format are taxable. However, the Akanthos court held that those costs *may* be taxable. 2 F. Supp. 3d at 1318. Additionally, the Akanthos court, recognizing that "[t]he Eleventh Circuit has not decided whether e-discovery costs are taxable as necessary copies," determined that the prevailing party was not entitled to an award of e-discovery costs. Id. at 1313, 1318.  Accordingly, the e-discovery costs sought by the Bank, which includes charges for data uploading, monthly data hosting, and "Tech Time Related to QC," are not taxable costs under § 1920.

Finally, the Bank seeks costs for an invoice it attributes to trial exhibits. (Dkt. 328 Ex. 4 at 50)  The invoice includes charges for printing of 25,335 pages, twenty-four binders, and 300 tabs. The costs for binders and tabs are not taxable. See Awwad v. Largo Med. Ctr., Inc., No.

8:11-CV-1638-T-24TBM, 2013 WL 6198856, at *6 (M.D. Fla. Nov. 27, 2013). Therefore, the amount taxable for this invoice should be reduced by $1,035.00.

Accordingly, the Bank is entitled to an award of $3,927.94 in costs related to printing and copying.

### Conclusion

The Bank is entitled to costs under § 1920 in the amount of $40,312.94, subject to the approval of the court in the Receivership Action. The Bank also requests that those costs not taxable under 28 U.S.C. § 1920 be assessed as expenses under the contractual provisions cited in its motion for attorneys' fees. As the Court has concluded that the contractual provisions relied on by the Bank do not entitle it to an award of attorneys' fees, it follows that the provisions do not allow for an award of expenses that are not awardable as costs.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     Defendant's Motion for an Award of Expenses including Reasonable Attorneys' Fees, and Incorporated Memorandum of Law and Local Rule 3.01(g) Certificate (Dkt. 327) be **DENIED**; and

(2)     Defendant's Motion to Tax Costs Against Plaintiff and Incorporated Memorandum of Law and Local Rule 3.01(g) Certificate (Dkt. 329) be **GRANTED in part and DENIED in part** in that the Bank be awarded $40,312.94 in costs, subject to the approval of the court in the Receivership Action.

DATE: June 10, 2015

ELIZABETH A JENKINS
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge